# UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT


**JOSEPH HOFT,**
**Plaintiff-Appellant,**
**v.**

**RUBY FREEMAN and WANDREA "SHAYE" MOSS,**
**Defendants-Appellees.**

**Appeal No. 26-11929-BB**
**District Court No. 2:25-cv-14328-AMC**

**APPENDIX**


**Joseph Hoft**
Pro Se
8750 South Ocean Drive, Unit 534
Jensen Beach, FL 34957
Telephone: (772) 618-3512
Email: jwhoft@gmail.com

# INDEX TO APPENDIX

Appeal No. 26-11929-BB

Joseph Hoft v. Ruby Freeman and Wandrea "Shaye" Moss

| Tab | Document | Exhibit/ Doc. No. | Page |
|---|---|---|---|
| 1 | Reconstructed District Court Docket Sheet | | A-1 |
| 2 | Notice of Appeal (Doc. 54) | Doc. 54 | A-5 |
| 3 | Final Dismissal Order (Doc. 53) | Doc. 53 | A-7 |
| 4 | Magistrate Judge's Report and Recommendation (Doc. 49) | Doc. 49 | A-13 |
| 5 | Appellant's Objections to Report and Recommendation (Doc. 50) | Doc. 50 | A-19 |
| 6 | Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 46) | Doc. 46 | A-24 |
| 7 | Appellant's Response in Opposition to Motion to Dismiss (Doc. 48) | Doc. 48 | A-31 |
| 8 | Executed Waiver of Service for Wandrea Moss (Doc. 26) | Doc. 26 | A-38 |
| 9 | Executed Waiver of Service for Ruby Freeman (Doc. 27) | Doc. 27 | A-39 |
| 10 | Motion to Vacate Arbitration Award (Doc. 12) | Doc. 12 | A-40 |
| 11 | Memorandum of Law in Support of Motion to Vacate (Doc. 13) | Doc. 13 | A-46 |
| 12 | Arbitrator's Failure to Provide Rules and Assurances on Finality and Preclusion (Exhibits J, L, M, R) | Exhibits J, L, M, and R | A-52 |
| 13 | Appellant's Request and Arbitrator Bohrer's Non-Response Regarding Finality and Preclusion (Exhibits EE, FF) | Exhibits EE and FF | A-63 |
| 14 | Appellant's Response to Respondents' Attorneys Not Contacting Respondents "directly" (Exhibit Y) | Exhibit Y | A-65 |
| 15 | Appellant's Response to Initial Arbitration Award amount in Excess of $75,000 (Exhibit CC) | Exhibit CC | A-73 |
| 16 | Chart of Alleged Infringing Videos and Articles and Actions Taken (Prepared by Appellant and attached to the Arbitrator's Decision) | | A-76 |

| Tab | Document | Exhibit/ Doc. No. | Page |
|---|---|---|---|
| 17 | Confidential Mutual Release and Settlement Agreement (redacted — financial and payment terms) | Settlement Agreement | A-77 |
| 18 | Notice of Supplemental Authority – Presidential Pardon (Doc. 20) | Doc. 20 | A-86 |
| 19 | President Trump Pardon (Doc. 20-1) | Doc. 20-1 | A-89 |

# RECONSTRUCTED CIVIL DOCKET

United States District Court
Southern District of Florida
Fort Pierce Division

## Case No. 2:25-cv-14328-AMC

Joseph Hoft v. Ruby Freeman and Wandrea "Shaye" Moss

*(RECONSTRUCTED – Based on Filings in the Record)*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2025 | 1 | Petition to Vacate Arbitration Award filed by Joseph Hoft |
| 09/09/2025 | 2 | Motion for Leave to File Out of Time |
| 09/09/2025 | 4 | Motion to Seal |
| 09/09/2025 | 6 | Notice of Pro Se Appearance |
| 10/01/2025 | 9 | Order Denying Motion for Leave to File Amended Complaint |
| 10/02/2025 | 10 | Clerk's Notice of Compliance re: Unsealing Documents |
| 10/10/2025 | 11 | Consent to Pro Se Litigant Receiving Electronic Filing Notices |
| 10/14/2025 | 12 | Motion to Vacate Arbitration Award filed by Joseph Hoft |

| | | |
|---|---|---|
| 10/14/2025 | 13 | Memorandum of Law in Support of Motion to Vacate Arbitration Award |
| 10/14/2025 | 14 | Motion for Preliminary Injunction filed by Joseph Hoft |
| 10/23/2025 | 15 | Motion for Default Judgment filed by Joseph Hoft |
| 10/23/2025 | 16 | Clerk's Notice of Docket Correction |
| 10/23/2025 | 17 | Motion for Default filed by Joseph Hoft |
| 10/27/2025 | 19 | Supplemental Notice re: Summons and Service filed by Joseph Hoft |
| 11/04/2025 | 20 | Notice of Supplemental Authority (Presidential Pardon) filed by Joseph Hoft |
| 11/14/2025 | 21 | Motion for Status Update and to Expedite filed by Joseph Hoft |
| 11/21/2025 | 22 | Order Directing Service of Process (Magistrate Judge Maynard) |
| 11/25/2025 | 23 | Summons Issued as to Ruby Freeman and Wandrea Shaye Moss |
| 12/12/2025 | 26 | Waiver of Service Executed by Wandrea "Shaye" Moss |

| | | |
|---|---|---|
| 12/12/2025 | 27 | Waiver of Service Executed by Ruby Freeman |
| 12/25/2025 | 28 | Magistrate Judge's Order Continuing Case Management |
| 12/29/2025 | 29 | Motion to Update Name of Defendant Wandrea "Shaye" Moss |
| 01/05/2026 | 35 | Notice of Consent to Magistrate Judge Jurisdiction filed by Defendants |
| 01/07/2026 | 36 | Order Granting Motion for Reassignment to District Judge |
| 01/09/2026 | 37 | Clerk's Notice of Reassignment to District Judge Aileen M. Cannon |
| 01/12/2026 | 38 | Order Denying Motion for Preliminary Injunction |
| 01/12/2026 | 39 | Order Referring Case to Magistrate Judge |
| 01/15/2026 | 41 | Order Correcting Name of Defendant Wandrea Shaye Moss |
| 01/15/2026 | 42 | Notice of Completed and Supplemental Service of Process filed by Joseph Hoft |
| 01/15/2026 | 43 | Order Admitting Von DuBose Pro Hac Vice |

| | | |
|---|---|---|
| 01/26/2026 | 46 | Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendants |
| 01/27/2026 | 47 | Order Denying Renewed Motion for Preliminary Injunction |
| 02/03/2026 | 48 | Response in Opposition to Motion to Dismiss filed by Joseph Hoft |
| 04/02/2026 | 49 | Magistrate Judge's Report and Recommendation recommending dismissal |
| 04/19/2026 | 50 | Objections to Magistrate Judge's Report and Recommendation filed by Joseph Hoft |
| 05/15/2026 | 53 | Order Adopting Report and Recommendation and Dismissing Case (Judge Cannon) |
| 06/01/2026 | 54 | Notice of Appeal filed by Joseph Hoft |

*NOTE: This is a RECONSTRUCTED docket sheet based on documents filed in the record. It is not an official PACER docket. Some early entries may be incomplete. Use the 'Page' column to note the actual page number in the final Appendix once assembled.*

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION**

**CASE NO. 2:25-cv-14328-AMC**

JOSEPH HOFT, Plaintiff,

v.

RUBY FREEMAN and WANDREA "SHAYE" MOSS, Defendants.

NOTICE OF APPEAL

Notice is hereby given that Plaintiff Joseph Hoft, pro se, appeals to the United States Court of Appeals for the Eleventh Circuit from the Order Accepting Report and Recommendation, Granting Motion to Dismiss, and Closing Case (DE 53), entered on May 15, 2026.

Dated: ___June 1, 2026___

/s/ Joseph Hoft

Joseph Hoft, Pro Se

8750 South Ocean Drive, Unit 534

Jensen Beach, FL 34957

Phone: 772-618-3512

Email: jwhoft@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on ___June 1___, 2026, a true and correct copy of the foregoing Notice of Appeal was served on all counsel of record as follows:

A-5

- **David A. Blansky, Esq., Von A. DuBose, Esq., and Michael Dunn, Esq.** — via CM/ECF

- **Matt Ampleman, Esq.** — via email ([mampleman@dowdbennett.com](mailto:mampleman@dowdbennett.com)) and U.S. Mail, certified with return receipt requested

- **Brittany Williams, Esq.** — via email ([brittany.williams@protectdemocracy.org](mailto:brittany.williams@protectdemocracy.org)) and U.S. Mail, certified with return receipt requested

/s/ Joseph Hoft

Joseph Hoft, Pro Se

A-6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 25-14328-CIV-CANNON/Maynard

JOSEPH HOFT,

     Plaintiff,

v.

RUBY FREEMAN and
WANDREA SHAYE MOSS,

     Defendants.

_____/

## ORDER ACCEPTING REPORT AND RECOMMENDATION; GRANTING MOTION TO DISMISS; AND CLOSING CASE

**THIS CAUSE** comes before the Court upon Magistrate Judge Maynard's Report and Recommendation on Defendant's Motion to Dismiss Plaintiff's Motion to Vacate Arbitration Award [ECF No. 49]. The Report recommends the Court dismiss Plaintiff's Motion to Vacate Arbitration Award for lack of jurisdiction [ECF No. 49 (recommending dismissal of ECF No. 12)]. The Court has reviewed the Report [ECF No. 45] and the full record, including Plaintiff's Objections to the Report [ECF No. 50; *see* ECF Nos. 46, 48]. Following review, the Report [ECF No. 49] is **ACCEPTED**, and the Motion to Dismiss [ECF No. 46] is **GRANTED**.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

This action arises out of a state arbitration proceeding in which an arbitration panel ordered Plaintiff to pay Defendants $63,050 due to his breach of an underlying settlement agreement between the parties [ECF No. 12]. Plaintiff seeks to vacate the arbitration award under 9 U.S.C. § 10 of the Federal Arbitration Act ("FAA"), asserting arbitrator misconduct and manifest disregard of the law [ECF No. 12 pp. 2–3].

A-7

The jurisdictional source underlying Plaintiff's Motion is diversity jurisdiction under 28 U.S.C. § 1332, which confers original jurisdiction upon federal courts over matters between citizens of different states where the controversy exceeds $75,000 [ECF No. 12 p. 2].  To meet the $75,000 amount in controversy requirement, Plaintiff references several figures pertinent to the arbitration proceedings, including the purported value of the underlying settlement agreement— allegedly exceeding $1,000,000—as well as aggregated amounts such as attorneys' fees and "potential future arbitration costs" [ECF No. 12 p. 2].[1]

On January 26, 2026, Defendants moved to dismiss this action for lack of jurisdiction [ECF No. 46].  By Plaintiff's own calculations, Defendants argue, the arbitration award is capped at $63,050, which limits the value of Plaintiff's lawsuit and sets the amount in controversy for purposes of diversity jurisdiction [ECF No. 46 p. 2].

After full briefing, Magistrate Judge Maynard agreed and recommended dismissal for lack of subject matter jurisdiction [ECF No. 49].  Specifically, the Report explains that $63,050 is "the maximum concrete monetary value of the object of the litigation," and that Plaintiff's "speculative or collateral figures such as attorneys' fees and anticipated future arbitration costs" are "remote, contingent, or hypothetical damages that are not directly at issue in the present action" [ECF No. 49 pp. 4–5].

Plaintiff filed timely objections to the Report, attempting to reach the $75,000 jurisdictional amount in two separate ways [ECF No. 50].  First, Plaintiff attempts to supplement the $63,050 arbitration award with the $47,559 in attorneys' fees sought by Defendants in the underlying arbitration, which he claims pushes him over the jurisdictional hump [ECF No. 12 p. 2; ECF No. 50 p. 2].  Second, Plaintiff cites *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d

---

[1] The parties do not dispute diversity of citizenship, which is properly pled [ECF Nos. 45, 50].

1320, 1325 (11th Cir. 2005), arguing that a future potential award in a subsequent arbitration proceeding might exceed $75,000, thus providing the Court with subject matter jurisdiction in the instant case. Defendant filed a Notice of No Objection to the Report [ECF No. 52], which is otherwise ripe for adjudication.

## LEGAL STANDARDS

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784.

## DISCUSSION

Federal courts are courts of limited jurisdiction and must strictly construe the limits of their jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). When subject matter jurisdiction is lacking, dismissal is mandatory. *See Morrison v. Allstate Indem. Co*., 228 F.3d 1255, 1261 (11th Cir. 2000). As noted, under § 1332(a), diversity jurisdiction exists only where the case is between litigants of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Where the pleadings make clear to a legal certainty that the claim is really for less than the jurisdictional amount, dismissal is required. *Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002).

When a party seeks vacatur of an arbitration award, the "maximum remedy sought" is the value of the "arbitration award," and thus the award alone provides the amount in controversy. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997).  There is a limited exception to this rule, however, as articulated by the Eleventh Circuit in *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1325 (11th Cir. 2005).  *Peebles* involved a real estate developer who contracted with Merrill Lynch, an investment finance company, allowing it to invest large amounts of his funds.  *Id.* at 1322.  When Merrill Lynch made several poor investments in highly speculative technology stocks, the real estate developer suffered over $1,000,000 in losses.  *Id.*  He thereafter sued Merrill Lynch for fraud and other related claims, and the parties proceeded to arbitration, where an arbitration panel issued a zero-dollar arbitration award and dismissed all of the real estate developer's claims.  *Id.* at 1323.  The issue presented in *Peebles* was whether, in the real estate developer's subsequent attempt to vacate the zero-dollar arbitration award, the federal district court had diversity jurisdiction over the suit.  *Id.*  The Eleventh Circuit said yes, notwithstanding the zero-dollar arbitration award, because the real estate developer sought a "new arbitration hearing at which he w[ould] demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes"—specifically, he represented that he would seek $2,000,000 in a subsequent arbitration hearing.  *Id.* at 1325.  That representation, said the Eleventh Circuit, provided the requisite amount in controversy for diversity jurisdiction.  *Id.  Peebles* provides the only exception to *Baltin*'s foundational rule: that the value of the "arbitration award"—by itself—provides the amount in controversy.  *Baltin*, 128 F.3d at 1472.

Applying these principles here, Magistrate Judge Maynard correctly determined that the arbitration award against Plaintiff, which everyone agrees is $63,050 on its face, does not meet the $75,000 amount-in-controversy requirement [ECF No. 49 p.2; ECF No. 12].  Plaintiff tries to

escape this "legal certainty," *Baltin*, 128 F.3d at 1472, but his arguments fail.  He first attempts to combine the $47,559 in attorneys' fees sought by Defendants in the underlying arbitration, with the $63,050 sum ultimately awarded against him in those proceedings, claiming the total exceeds the $75,000 jurisdictional amount.  But under *Baltin*, neither the sought attorneys' fees nor the potential value of the underlying arbitration proceedings can supplement the award itself, which provides the sole basis for the amount in controversy in a subsequent case seeking vacatur of that award.  *See Baltin*, 128 F.3d at 1468 (holding that the sum initially sought in an underlying arbitration proceeding had no bearing on the jurisdictional amount in controversy in a subsequent case seeking to vacate that award).

Plaintiff also relies heavily on the limited *Peebles* exception, which if applicable, would allow him to supplement the amount in controversy if he sought a new arbitration proceeding and "demand[ed] a sum which exceeds the amount in controversy for diversity jurisdiction purposes." *Peebles*, 431 F.3d at 1325.  The record does not support that hypothetical.  While Plaintiff does seek renewed arbitration, nothing in the Motion to Vacate [ECF No. 12] reflects any type of "demand" for a "sum" which "exceeds the amount in controversy."  *Peebles*, 431 F.3d at 1325. Instead, Plaintiff merely seeks remand "for a new arbitration with a different arbitrator" [ECF No. 12 p. 4].  And more basically, because Plaintiff speaks of his "potential liability" in future arbitration proceedings and ultimately seeks a reduction in the award against him [ECF No. 12 p. 2], this case is the inverse of *Peebles*—in Plaintiff's ideal scenario, the amount in controversy goes *down*, not *up*.  *Cf. Peebles*, 431 F.3d at 1325.

Accordingly, the "maximum remedy sought" by Plaintiff is "the vacatur of the arbitration award," which was only $63,050, below the $75,000 amount in controversy requirement.  *Baltin*, 128 F.3d at 1472.  Put differently, "[d]iversity jurisdiction d[oes] not exist because it was a 'legal

certainty' that the amount in controversy was less than" the jurisdictional minimum at the time Plaintiff filed this case.  *Id.*

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 49] is **ACCEPTED**.  Magistrate Judge Maynard is correct that the Court lacks diversity jurisdiction over this action [ECF No. 49].

2. Defendants' Motion to Dismiss [ECF No. 46] is **GRANTED**.

3. This action is **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**.[2]

4. The Clerk is directed to **CLOSE** this case. Any scheduled hearings are **CANCELED**, any pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**ORDERED** in Chambers at Fort Pierce, Florida, this 15th day of May 2026.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[2] The Report appears to conclude that dismissal should be with prejudice [ECF No. 49 p. 5].  A dismissal for lack of subject matter jurisdiction, however, "must be without prejudice*." McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313 (11th Cir. 2021).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-14328-CIV-CANNON/MAYNARD

JOSEPH HOFT,

      Plaintiff,

v.

RUBY FREEMAN and
WANDREA "SHAYE" MOSS,

      Defendants.

_____/

### REPORT AND RECOMMENDATION ON
### DEFENDANT'S MOTION TO DISMISS [DE 46]

     **THIS CAUSE** is before me upon Defendants' Motion to Dismiss ("Motion").  DE 46.
Plaintiff has filed a response in opposition.  DE 48.  No timely reply was filed.  Presiding U.S.
District Judge Aileen M. Cannon has referred this case to me for a report and recommendation on
any dispositive matters, inclusive of the instant Motion.  DE 39.  For the following reasons, I
recommend that the Motion, DE 46, be **GRANTED** and that the Complaint be **DISMISSED
WITH PREJUDICE** for lack of subject matter jurisdiction.

### BACKGROUND

     Plaintiff, proceeding *pro se*, moves to vacate an arbitration award entered in an underlying
state-law arbitration proceeding.  DE 12.  According to the motion, an arbitrator conducted
proceedings in Miami, Florida and issued an award on May 22, 2025, that became final on June
11, 2025.  *Id.* at 2-3.  This award requires Plaintiff to pay Defendants $63,050 based on an alleged
breach of a prior settlement agreement arising from a Missouri state court action.  *Id.*

Plaintiff seeks to vacate the arbitration award under 9 U.S.C. § 10 of the Federal Arbitration Act ("FAA"), asserting arbitrator misconduct and manifest disregard of the law. *Id.* at 2-3. Plaintiff asks the Court to set aside the award and grant additional relief preventing its enforcement. *Id.* at 4-6. As the sole basis for jurisdiction, Plaintiff invokes diversity jurisdiction under 28 U.S.C. § 1332, alleging that he is a Florida citizen and Defendants are citizens of Georgia. *Id.* at 2. To satisfy the amount-in-controversy requirement, Plaintiff references several figures, including the purported value of the underlying settlement agreement—allegedly exceeding $1,000,000—as well as aggregated amounts such as attorneys' fees and "potential future arbitration costs." *Id.*

Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). They argue that the amount in controversy does not exceed $75,000 threshold and that Plaintiff's reliance on speculative or collateral amounts is improper. Defendants further contend that the FAA does not provide an independent basis for jurisdiction. Plaintiff agrees that the FAA does not confer independent jurisdiction but maintains that the combined amounts he identifies satisfy the jurisdictional threshold.

### LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction and must dismiss an action whenever it appears that jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1); *Lost Mountain Homeowners Ass'n v. Rice,* 248 F. App'x 114, 115 n.1 (11th Cir. 2007). The plaintiff bears the burden of establishing federal subject matter jurisdiction. *Goldfeder v. United States*, 764 F. Supp. 3d 1226, 1229 (S.D. Fla. 2025) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)).

A Rule 12(b)(1) challenge may be either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A facial challenge requires the court to accept the complaint's

allegations as true and determine if they sufficiently invoke federal jurisdiction. *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 987 (S.D. Fla. 2020). A factual challenge, by contrast, permits the court to consider evidence outside the pleadings and does not require the court to accept the complaint's allegations as true. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). Here, Defendants' jurisdictional challenge is facial because it is based solely on Plaintiff's allegations and does not rely on extrinsic evidence. I therefore accept Plaintiff's allegations as true for purposes of my analysis. *See Lawrence*, 919 F.2d at 1529.

## ANALYSIS

I must determine whether Plaintiff has established subject matter jurisdiction, including whether he satisfies the amount-in-controversy requirement under 28 U.S.C. § 1332. This requires evaluation of Plaintiff's aggregation theories and whether the additional sums he identifies may properly be considered in calculating the jurisdictional threshold. I will address these issues, in turn, below.

Federal courts possess only the jurisdiction conferred by the Constitution and statute. As Plaintiff correctly concedes, the FAA does not provide an independent basis for federal subject matter jurisdiction in this case involving an arbitration-related dispute. DE 48 at 3. This point of law is well established. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469, 1471 (11th Cir. 1997), *cert. denied*, 525 U.S. 841 (1998) (holding that "sections 10 and 11 of the FAA do not provide an independent statutory grant of federal subject matter jurisdiction"). Thus, a party seeking to confirm or vacate an arbitration award in federal court must establish an independent jurisdictional basis.

Here, Plaintiff relies solely on diversity jurisdiction under 28 U.S.C. § 1332(a).  To invoke jurisdiction under that provision, a plaintiff must establish complete diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs.  *Id.*; *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010).

Plaintiff alleges that he is a citizen of Florida and that Defendants are citizens of Georgia. Defendants do not dispute those allegations. For purposes of the present Motion, I therefore assume without deciding that complete diversity exists.  *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.").

The dispositive issue is whether the amount in controversy requirement exceeds $75,000. Under binding Eleventh Circuit precedent, the amount in controversy is measured by "the monetary value of the object of the litigation from the plaintiff's perspective."  *See Federated Mutual Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003); *see also Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir. 1997).   In an action seeking to vacate an arbitration award, courts measure the amount in controversy by the value of the award itself.  *See Baltin*, 128 F.3d at 1472.  In *Baltin*, for example, the remedy sought was vacatur of the arbitration award of $36,284.69, which was below the amount-in-controversy threshold.  *Id.*

Applying that principle here, Plaintiff seeks to vacate an arbitration award requiring him to pay $63,050.  That amount represents the maximum concrete monetary value of the object of the litigation.  Plaintiff's reliance on the purported value of the underlying settlement agreement, as well as speculative or collateral figures such as attorneys' fees and anticipated future arbitration costs, does not alter the jurisdictional analysis.  The amount in controversy must be determined by

the relief actually sought, not by remote, contingent, or hypothetical damages that are not directly at issue in the present action. *See Federated Mut. Ins. Co.*, 329 F.3d at 808 (rejecting reliance on speculative bad-faith damages and attorneys' fees to satisfy the jurisdictional threshold where the underlying policy limit was $50,000).

Eleventh Circuit precedent cited by Plaintiff himself confirms this approach. DE 12 at 2. In *Federated Mutual*, the Eleventh Circuit held that a $50,000 policy limit, combined with conjectural additional damages, was insufficient to meet the § 1332 threshold. *Federated Mutual*, 329 F.3d at 808-09. The same reasoning applies here. The arbitration award of $63,050 represents the maximum concrete economic stake before the Court. Plaintiff cannot rely on the purported value of the underlying settlement or collateral consequences to inflate the jurisdictional amount.

Because Plaintiff has not shown that the amount in controversy exceeds $75,000, he has failed to establish subject matter jurisdiction under § 1332. Accordingly, this Court lacks jurisdiction over the action.

Because the jurisdictional deficiency is not curable, leave to amend would be futile. No amendment could alter the amount in controversy, which is defined by the fixed arbitration award of $63,050 that Plaintiff seeks to vacate. Dismissal should therefore be without leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (while leave to amend should generally be freely given, a district court may properly disallow leave to amend when such amendment would be futile).

## CONCLUSION

For the reasons stated above, the Court lacks subject matter jurisdiction. I therefore respectfully **RECOMMEND** that Defendant's Motion to Dismiss, DE 12, be **GRANTED**; that

this case be **DISMISSED** for lack of subject matter jurisdiction; and that the Clerk of Court be directed to **CLOSE** this case.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Aileen M. Cannon.   Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 2nd day of April, 2026.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

A-18

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION CASE NO. 2:25-cv-14328-AMC

JOSEPH HOFT, Plaintiff,

v.

RUBY FREEMAN and WANDREA "SHAYE" MOSS, Defendants.

FILED BY____LC____D.C.

APR 15 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DE 49)

Plaintiff Joseph Hoft, proceeding pro se, respectfully submits the following objections to the Report and Recommendation ("Report") (DE 49) and requests de novo review pursuant to 28 U.S.C. § 636(b)(1).

## I. STANDARD OF REVIEW

The District Court must conduct a de novo review of any portion of the Report to which specific objection is made. 28 U.S.C. § 636(b)(1).

## II. CORE OBJECTION

The Report errs by treating the amount in controversy as fixed at $63,050 (DE 49 at 4–5) and by applying Eleventh Circuit precedent in an overly rigid manner that does not account for the procedural posture and economic realities present at the time this action was filed.

It is well established that the amount in controversy is determined at the time of filing. See Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003). At that time, Plaintiff sought vacatur of the arbitration award as a means to avoid preclusive effect and

A-19

to pursue substantial underlying claims arising from a dispute valued at over $1 million (DE 14 ¶ II).

The Report's approach would improperly reduce the jurisdictional inquiry to the face value of the arbitration award, contrary to Eleventh Circuit precedent recognizing that the amount in controversy includes the full value of the relief sought.

III. ARGUMENT

A. The Report Improperly Narrows the Amount in Controversy

Although the arbitration award was reduced to $63,050 prior to filing, that figure does not fully capture the amount in controversy. Defendants initially demanded $88,559, including attorney's fees (DE 14, Ex. CC). The subsequent reduction to $63,050 (DE 14, Ex. BB) followed Plaintiff's challenge to those fees, demonstrating that the amount at issue was substantial and actively contested.

B. Peebles v. Merrill Lynch Controls This Exact Situation

This case falls squarely under binding Eleventh Circuit precedent in Peebles v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 431 F.3d 1320 (11th Cir. 2005). In Peebles, the plaintiff sought to vacate a zero-dollar arbitration award and requested a new arbitration hearing before a different panel so he could pursue up to $2 million in damages. The Eleventh Circuit held that diversity jurisdiction existed because "the maximum remedy Peebles sought was vacatur of a zero-dollar arbitration award and a new arbitration hearing at which he could urge his argument that he was entitled to up to $2,000,000 in damages." Id. at 1325–26.

This case is materially indistinguishable from Peebles for jurisdictional purposes. As in Peebles, Plaintiff seeks vacatur not as an end in itself, but as a necessary step to avoid preclusion and to pursue substantial underlying claims arising from a dispute valued at over $1 million (DE 14 ¶ II).

As reflected in the record, Plaintiff seeks to avoid any potential relitigation to come before the same arbitrator (which is dictated by the settlement agreement) due to the many issues identified during the arbitration, included in his Motion and Memo of Understanding. The underlying controversy that led to the settlement agreement was valued at over $1 million. Vacating the award is the vehicle to avoid preclusion and enable relitigation before a neutral decision-maker consistent with applicable law — exactly the scenario Peebles says satisfies the jurisdictional threshold.

C. This Is Not the "Pure Vacatur of a Small Award" Scenario Addressed in Baltin

In contrast, Baltin v. Alaron Trading Corp., 128 F.3d 1466 (11th Cir. 1997) involved only the vacatur of a fixed $36,284.69 award with no request for a new hearing or further relief on the underlying claims. The Eleventh Circuit applied the "award approach" because it was a "legal certainty" the amount at stake was below the threshold.

This case falls within the Peebles framework, not Baltin. The stakes of vacatur include the $1M+ underlying controversy and the right to relitigate those issues before a different decision-maker.

D. The Legal Certainty Standard Is Not Satisfied

A-21

Dismissal is appropriate only where it appears to a legal certainty that the claim is for less than the jurisdictional amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Here, the record — including the original $88,559 demand, the $1M+ underlying settlement, and the unresolved finality issues — forecloses any such conclusion.

E. Persuasive Authority from Other Circuits Further Supports Jurisdiction

While not binding, other circuits have recognized that in FAA-related proceedings, courts may consider the full value of the underlying dispute rather than the face value of the final award. See Pershing LLC v. Kiebach, 819 F.3d 179 (5th Cir. 2016). These authorities reinforce that the jurisdictional analysis should reflect the real economic stakes at issue.

IV. CONCLUSION

Plaintiff further notes, for completeness, that certain developments referenced in prior filings (see DE 20, Ex. OO) may bear on the enforceability and scope of the underlying settlement agreement. Plaintiff does not rely on those matters for purposes of establishing subject-matter jurisdiction, but preserves them for consideration if this action proceeds.

The amount in controversy exceeded $75,000 at the time this action was filed. The Report's contrary conclusion rests on an overly narrow and factually incomplete application of governing law.

Plaintiff respectfully requests that the Court reject the Report and Recommendation (DE 49) and deny Defendants' Motion to Dismiss (DE 46).

Respectfully submitted,

/s/ Joseph Hoft

Joseph Hoft, Pro Se

8750 South Ocean Drive, Unit 534

Jensen Beach, FL 34957

772-618-3512

jwhoft@gmail.com

Dated: April 15, 2026

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2026, a true and correct copy of the foregoing was served on all counsel of record as follows:

- David A. Blansky, Esq. and Von A. DuBose, Esq. – via CM/ECF
- Matt Ampleman, Esq. – via email (mampleman@dowdbennett.com) and U.S. Mail, certified with return receipt requested
- Brittany Williams, Esq. – via email (brittany.williams@protectdemocracy.org) and U.S. Mail, certified with return receipt requested

/ s / Joseph Hoft

Joseph Hoft, Pro Se

A-23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JOSEPH HOFT,

    Petitioner,

v.                                                                    Case No.: 2:25-cv-14328-SMM

RUBY FREEMAN and
WANDREA MOSS,

    Respondents.

_____/

## RESPONDENTS' MOTION TO DISMISS

### I. INTRODUCTION.

Defendants Ruby Freeman and Wandrea Moss ("Respondents") respectfully move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The pleadings establish to a legal certainty that the amount in controversy does not exceed $75,000, exclusive of interest and costs, and this Court therefore lacks jurisdiction under 28 U.S.C. § 1332(a).

### II. STANDARD OF LAW

Federal courts are courts of limited jurisdiction and must strictly construe the limits of their jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). When subject matter jurisdiction is lacking, dismissal is mandatory. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000). Under § 1332(a), diversity jurisdiction exists only where the amount in controversy exceeds $75,000. Where the pleadings make clear to a legal

1

certainty that the claim is really for less than the jurisdictional amount, dismissal is required.

*Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002).

### III. LAW & ANALYSIS

Here, Hoft has admitted that the amount in controversy is less than $75,000.  With his

Motion to Vacate the Arbitration Award (the "Motion"), Hoft seeks to vacate an award that, by his

calculations totals, $63,050. [ECF 12 at 3]. This is not a case involving speculation, ambiguity, or

indeterminate damages. Hoft affirmatively alleged that the amount in controversy does not exceed

the jurisdictional threshold, even including awarded attorneys' fees and $6,000 in arbitration fees:

> The award granted Respondents $15,000 in compensatory damages,
> $20,000 in punitive damages, and attorneys' fees. These fees were
> claimed by the Respondents' attorneys to be $47,559 but were
> reduced to $22,050 following Petitioner's challenge on June 5,
> 2025, resulting in a $25,509 reduction (Exhibits CC, DD). An
> additional $6,000 in arbitrator fees initially paid by the Respondents
> was also added, **resulting in an award of $63,050** (Exhibit BB).

*Id.* (emphasis added)

Nonetheless, in his Motion, Hoft asserted that: "[t]he amount in controversy exceeds

$75,000, as the underlying settlement is valued at over $1 million (Exhibit B), and Respondents

initially claimed $47,559 in attorneys' fees, creating a potential liability of $88,559, which was

reduced by $25,509 following Petitioner's challenge (Exhibits CC, FF)." But these inflated

calculations fail on application of the facts and under scrutiny of applicable law.  Hoft seeks to pad

the amount in controversy by referencing the value of the underlying settlement between the parties

($1 million), Respondents' *initial* claim for attorneys' fees and Petitioner's $6,000 payment to the

Arbitrator.  *Id.*

2

But Hoft's attempt to manufacture federal jurisdiction by aggregating legally irrelevant figures fails as a matter of law. The "value" of an underlying settlement exceeding $1 million is immaterial to the amount in controversy because the jurisdictional inquiry focuses on the value of the claims actually before the Court, not the face value of a collateral agreement that is not being enforced here. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000). Likewise, attorneys' fees do not automatically count toward the jurisdictional amount and may be included only if recoverable as a matter of right and supported by competent evidence, not conjecture or arithmetic manipulation. *Federated Mut. Ins. Co,* 329 F.3d at 808 (11th Cir. 2003).[1] Here, Hoft nevertheless pled facts that*, even including attorneys' fees*, would be insufficient to meet the requisite jurisdictional requirements.  Moreover, Hoft cannot rely on payments to the arbitrator or speculative "future arbitration costs," which are contingent, uncertain, and not recoverable damages in this action.  *Leonard*, 279 F.3d at 972–73.; *Spivey v. Fred's, Inc.*, 554 F. Supp. 2d 1271, 1274–75 (M.D. Fla. 2008). When such improper components are excluded, it is clear to a legal certainty that the amount in controversy does not exceed $75,000, requiring dismissal for lack of subject matter jurisdiction.

Moreover, the Federal Arbitration Act does not confer an independent basis for federal subject matter jurisdiction. Instead, it requires an independent jurisdictional foundation under Title 28 before a federal court has subject matter jurisdiction. *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1253 (11th Cir. 2003) (holding that the FAA "does not provide an independent basis for

---

[1] Notably, the very case Hoft cites, *Federated Mutual Insurance*, confirms the absence of jurisdiction here. *See Federated Mutual Insurance* 329 F.3d at 808–09 (11th Cir. 2003) (holding that the court lacked subject matter jurisdiction where the policy limit was $50,000, speculative reliance on potential bad-faith damages could not bridge the jurisdictional gap, and attorneys' fees could not be counted toward the amount in controversy because they were neither statutory nor contractual)

federal court jurisdiction" and that a court may entertain an FAA petition only if it would otherwise have jurisdiction over the underlying controversy).

Finally, Hoft's arithmetic in the Motion to Vacate is consistent with representations made to the Court in ancillary documents.  Hoft admitted in the mandatory Civil Cover Sheet that the amount in controversy is less than $75,000, detailing the "Demand" as $63,050.  [ECF 12 at 1]. Because the amount in controversy must be assessed based on the Petitioners' own claims at the time jurisdiction is invoked, Hoft's express admission is binding and dispositive. *Leonard*, 279 F.3d at 972.

### IV. CONCLUSION

Because Hoft has affirmatively pleaded that the amount in controversy does not exceed $75,000, even including attorneys' fees, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a). The pleadings establish that jurisdiction is absent.

Dated: January 26, 2026

Respectfully submitted,

**DUNN LAW, P.A.**

*Local Counsel for Defendants, Ruby Freeman and Wandrea "Shaye" Moss*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Tel: 786-433-3866
Fax: 786-260-0269
dblansky@dunnlawpa.com

By:     */s/ David A. Blansky*
        David A. Blansky, Esq.
        Florida Bar No. 1033002

4

Von A. DuBose, Esq.
*admitted pro hac vice*
**DuBose Trial Law, LLC**
*Counsel for Defendants, Ruby
Freeman and Wandrea "Shaye" Moss*
128 Richardson Street, SE
Atlanta, Georgia 30312
(404) 720-8111
von@dubosetrial.com

5

**Certificate of Service**

I hereby certify that on January 26, 2026, I electronically filed the foregoing with the Clerk using the Court's CM/ECF system, which will send notice to all counsel/parties of record and also emailed a copy directly to Plaintiff.

By: /s/ David A. Blansky
David A. Blansky, Esq.
Florida Bar No. 1033002

6

A-29

7

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION

Case No. 25-cv-14328-AMC

Joseph Hoft, Plaintiff,

v.

Ruby Freeman and Wandrea "Shaye" Moss, Defendants.

FILED BY _____ D.C.

FEB 09 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (D.E. 46)

I. INTRODUCTION

Defendants assert dismissal under 28 U.S.C. § 1332(a). The Court has diversity jurisdiction: complete diversity exists, and the amount in controversy exceeds $75,000. The motion fails on every ground.

II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins., Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938).

A-31

Federal courts exercise diversity jurisdiction where the amount in controversy exceeds $75,000, and citizenship is completely diverse. 28 U.S.C. § 1332(a).

III. AMOUNT IN CONTROVERSY

Before any reduction, Defendants demanded $88,559 in damages and fees (D.E. 14, Exhibit CC). In addition, Plaintiff paid $6,000 to the arbitrator (D.E. 14, Exhibit R). Combined, the Plaintiff faced $94,559 in damages and fees—well above $75,000 threshold.

The Amended Motion to Vacate (DE 14) alleges:

- The **underlying settlement agreement** was valued at **over $1 million** (DE 14, ¶ II).
- Defendants initially claimed **$47,559** in attorney fees (DE 14, Exhibit CC).
- The arbitration award is **$63,050** (DE 14, Exhibit BB), plus arbitrator fees and potential future claims.

Total exposure exceeds $75,000. The **underlying controversy** (settlement value and fee claims) controls, not just the award amount.

The Eleventh Circuit has held that in FAA vacatur actions, the amount in controversy is the **value of the underlying dispute** that the arbitration addressed, not the amount of the award (*Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997)). The Fifth Circuit, whose FAA jurisdiction precedents are frequently cited in the Eleventh Circuit, has similarly ruled that the underlying dispute value controls even when the award is below $75,000 (*Pershing LLC v. Kiebach*, 819 F.3d 179 (5th Cir. 2016); *Gulf Coast Indus. Workers Union v. Exxon Co.*, 70 F.3d 847 (5th Cir. 1995)).

In addition to the fees itemized above, fees assumed in a case the Defendants filed in a Georgia court (25cv8850) two weeks after this case was filed, demanding the amount awarded by the Arbitrator in the underlying arbitration, as well as "…such other and further relief as the Court deems just and proper," should also be included when determining the underlying controversy.

The total value at stake exceeds $75,000, and dismissal is not warranted.

Defendants' reliance on the post-reduction award of $63,050 ignores the full value of the controversy. The Civil Cover Sheet merely reports the award amount—it does not define the jurisdictional limit.

## IV. FAA AND INDEPENDENT JURISDICTION

The FAA does not confer independent jurisdiction. Household Bank v. JFS Grp., 320 F.3d 1249, 1253 (11th Cir. 2003). However, 28 U.S.C. § 1332(a) supplies that basis here. Complete diversity exists: Plaintiff is a Florida citizen; Defendants are Georgia citizens. The amount in controversy, as established above, exceeds $75,000. Therefore, this Court has subject matter jurisdiction over the petition.

## V. SERVICE OF PROCESS

Although this petition was filed on September 9, 2025, Defendants waited until January 26, 2026—over four months later—to file this motion (D.E. 46), after jurisdictional facts were fully developed.

The petition and subsequent filings by the Plaintiff were mailed and emailed to the attorneys who represented Defendants in the arbitration (Ampleman and Williams). They responded to

certified mail and forwarded receipts back to the Plaintiff, but then suddenly on October 24, 2025, Mr. Ampleman emailed the following to the Plaintiff: "For avoidance of doubt, service has neither been accepted nor waived on behalf of Mses. Freeman and Moss, and Mses. Freeman and Moss have not consented to service by email correspondence." This response was received over a month after the initial notice. (D.E 19).

After it was determined that a Summons was required in this case (D.E. 22) a Summons was issued to Ms. Freeman and Ms. Moss. But then the Defendant's attorneys agreed to waive summons, and on December 12, 2025, Defendants executed waivers of formal service (D.E. 26, 27). Under Fed. R. Civ. P. 4(d), and such waivers were valid and complete.

Defendants, lack standing to challenge the sufficiency of service. The Court need not consider this objection, but the efforts to get to this point should be noted.

## VI. GROUNDS FOR VACATUR

### A. Arbitrator Misconduct

Under 9 U.S.C. § 10(a)(3) Robbins v. Day, 954 F.2d 679, 682 (11th Cir. 1992): "The arbitrator's refusal to postpone the hearing, taken together with his failure to consider material evidence, deprived of a fundamentally fair hearing. Such conduct constitutes 'misconduct' under § 10(a)(3)." Here, the arbitrator forced Plaintiff to negotiate fees directly with Defendants' counsel and then refused to engage post-award—classic prejudice.

Plaintiff repeatedly requested the arbitration rules (Exhibits J, L, M, R), yet the arbitrator never provided any—leaving Plaintiff without guidance on timing, evidence, or procedure. Post-award,

when Plaintiff sought clarification on finality, the arbitrator refused to engage, stating only, 'I have completed my work as arbitrator' (Exhibit II) and declined to confirm whether the award barred future claims. This combination of withholding rules and post-award silence, coupled with forcing Plaintiff to negotiate fees directly with opposing counsel, deprived Plaintiff of a fundamentally fair hearing and constitutes misconduct under § 10(a)(3).

B. Indefinite Award

Under 9 U.S.C. § 10(a)(4) Kyocera Corp. v. Hemmi, 341 F.3d 1344, 1348 (11th Cir. 2003): "An arbitration award is not 'mutual, final, and definite'... if it leaves the parties uncertain as to whether the arbitrator has fully resolved the dispute."

In the underlying arbitration, the Defendants' attorneys claimed that the Plaintiff, Mr. Hoft, breached the settlement agreement by using terms such as "watermain break" or "Rudy Giuliani" without identifying the Defendants by name.  The Plaintiff still doesn't believe his statements went outside the agreement, and this expanded the scope of what constitutes a violation of the agreement, makes it impossible for the Plaintiff to know if reporting "Georgia", or any other related topic, will be a violation of the settlement agreement going forward. (Exhibit EE)

Nevertheless, the Plaintiff took down the videos related to the alleged exceptions under his control (i.e., at JoeHoft.com), and requested other sites do the same.  However, some of the 3rd parties with possession of these videos didn't take them down. The Plaintiff may not even be aware of other 3rd parties who may also have these videos on their platforms, and the Plaintiff cannot require them to take the videos down.  The Defendants' attorneys in the arbitration demanded that the videos be taken down from all platforms and ignored the Plaintiffs' efforts and

ability to do so. The arbitration ended with the potential for the very same videos not taken down by 3rd parties being brought forward in another arbitration case at any time, independent of the Plaintiff's ability to take them down or not (res judicata). (Exhibit BB)

Plaintiff asked twice whether the award barred future suits related to the same alleged exceptions of the settlement agreement. The arbitrator answered, "I can't comment." This left the door open for the Defendants (Plaintiffs in the arbitration) to include these exact same items in another arbitration, repeating in perpetuity. These were key reasons the Plaintiff could not accept the arbitration decision.

VIII. CONCLUSION

Jurisdiction is secure; service is complete; vacatur grounds survive. Defendants' motion (D.E. 46) must be denied.

Respectfully submitted,

/s/ Joseph Hoft

Joseph Hoft, Pro Se

8750 South Ocean Drive, Unit 534

Jensen Beach, Florida 34957

Phone: 772-618-3512 Email: jwhoft@gmail.com

Dated: February 9, 2026

**Certificate of Service** I certify that on February 9, 2026, a true and correct copy was served on:

- David A. Blansky, Esq., Dunn Law, P.A., 66 West Flagler Street, Suite 400, Miami, FL 33130 (via CM/ECF)
- Von A. DuBose, DuBose Trial Law, LLC, 128 Richardson Street, SE, Atlanta, GA 30312, von@dubosetrial.com (via CM/ECF)
- Matt Ampleman, Dowd Bennett LLP, 7676 Forsyth Blvd., Suite 1900, St. Louis, MO 63105, mampleman@dowdbennett.com (via email and U.S. Mail, certified with return receipt requested)
- Brittany Williams, Protect Democracy, 2020 Pennsylvania Ave. NW, #163, Washington, DC 20006, brittany.williams@protectdemocracy.org (via email and U.S. Mail, certified with return receipt requested)

/s/

Joseph Hoft

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| Joseph Hoft | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:25-cv-14328-SMM |
| Ruby Freeman et al. | ) | |
| *Defendant* | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To:   Joseph Hoft
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from          11/25/2025          , the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:          12/12/2025

/s/ David A. Blansky
*Signature of the attorney or unrepresented party*

Wandrea' Moss
*Printed name of party waiving service of summons*

David A. Blansky, Esq.
*Printed name*

Dunn Law, PA
66 West Flagler Street, Suite 400
Miami, Florida 33130
*Address*

dblansky@dunnlawpa.com
*E-mail address*

(786) 433-3866
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

A-38

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| Joseph Hoft | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:25-cv-14328-SMM |
| Ruby Freeman et al. | ) | |
| *Defendant* | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To:  Joseph Hoft

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from                11/25/2025           , the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:       12/12/2025

Ruby Freeman
*Printed name of party waiving service of summons*

/s/ *David A. Blansky*
*Signature of the attorney or unrepresented party*

David A. Blansky, Esq.
*Printed name*

Dunn Law, PA
66 West Flagler Street, Suite 400
Miami, Florida 33130
*Address*

dblansky@dunnlawpa.com
*E-mail address*

(786) 433-3866
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

A-39

**Motion to Vacate Arbitration Award**

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION CASE NO.: 25-CV-14328-SMM

JOSEPH HOFT, Petitioner,

v.

RUBY FREEMAN and WANDA "SHAYE" MOSS, Respondents.

MOTION TO VACATE ARBITRATION AWARD

Petitioner Joseph Hoft, appearing pro se, respectfully moves this Court to vacate the arbitration award issued on May 22, 2025, by Arbitrator Sanford Bohrer in the arbitration styled Freeman and Moss v. Hoft. This motion was originally filed in this Court on September 9, 2025, within the 90-day deadline under O.C.G.A. § 9-9-13(e) and 9 U.S.C. § 10 from the award's service on June 11, 2025 (Exhibit JJ), and is refiled on October 14, 2025, to address new developments. Proof of service for the original filing was filed on September 19, 2025, with certified mail receipts received and attorneys Matt Ampleman and Brittany Williams acknowledging electronic files on September 16, 2025 (Exhibit LL). One challenge with this case is that there is nothing in the Settlement Agreement (Exhibit B) that tells us what to do in the event that arbitration process breaks down and it unfortunately did. This omission and others prevent certainty in the arbitration process. The only thing that certain is that Georgia law applies. The Settlement Agreement specifies that "any claim arising from the Joseph Hoft Statements will be subject to Georgia Law" which indicates pursuant to Georgia Arbitration Code, O.C.G.A. § 9-9-13. Where the case goes when you file a motion to vacate the settlement agreement is silent as well. If you happen to find this frustrating, it is understandable. This alone may be why this arbitration decision and award need to be vacated to the degree that there needs to be instructions in the Settlement Agreement to provide clear language on a whole host is issues. This was something the Petitioner recommended but was never addressed by Bohrer or the Respondents' attorneys. (Exhibit HH) In addition to the Settlement Agreement omissions, the grounds for vacatur include arbitrator misconduct, evident partiality, post-award conduct, and manifest disregard of the law, as detailed below.

I. Choice of Law

The underlying Settlement Agreement between the Plaintiffs (Ruby Freeman and Wandrea Moss) is silent on what to do when the arbitrator in an arbitration exhibits misconduct, evident partiality, post-award misconduct, and manifest disregard of Georgia law. Notably, the agreement provides no guidance on where to file multiple actions, such as a motion to vacate the arbitration decision, leaving this critical procedural issue unresolved. However, the agreement specifies that "any claim arising from the Joseph Hoft Statements will be subject to Georgia Law" which indicates this motion to vacate the arbitration award is controlled by and pursuant to the Georgia Arbitration Code, O.C.G.A. § 9-9-13. The Eleventh Circuit applies the FAA to interstate disputes. *Gulfstream Aerospace Corp. v. Oceltip Aviation 1 Pty Ltd.*, 20 F.4th 178

(11th Cir. 2021). The Settlement Agreement is silent on conducting the arbitration based on the Federal Arbitration Act; however, the FAA applies in federal courts and state courts when the dispute involves federal question jurisdiction or diversity jurisdiction with an interstate commerce nexus (addressed below), indicating the Federal Arbitration Act, 9 U.S.C. § 10, is applicable. This silence on venue for multiple actions supports the propriety of filing in this Court.

II. Jurisdiction and Venue

This Court in the Southern District of Florida has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between Petitioner, a resident of St. Lucie County, Florida, and Respondents, residents of Georgia. Arbitrator Bohrer is located in Miami, Florida, also within the Southern District of Florida. The amount in controversy exceeds $75,000, as the underlying settlement is valued at over $1 million (Exhibit B), and Respondents initially claimed $47,559 in attorneys' fees, creating a potential liability of $88,559, which was reduced by $25,509 following Petitioner's challenge (Exhibits CC, FF). Additionally, Petitioner's $6,000 payment to Bohrer and potential future arbitration costs contribute to the jurisdictional amount. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir. 2003). Venue is proper under 9 U.S.C. § 10, as the arbitration award was issued from Miami, within the Southern District of Florida, and under S.D. Fla. L.R. 3.1, as Petitioner resides in St. Lucie County, within the Fort Pierce Division of the same District. This motion is timely under O.C.G.A. § 9-9-13(e) and 9 U.S.C. § 12, as it was originally filed on September 9, 2025, within 90 days of the award's service on June 11, 2025 (Exhibit JJ: "a reasonable end date… is 90 days from… June 11"). As a pro se litigant, Petitioner's good-faith efforts (Exhibits CC–II) and Bohrer's delay and refusal to address concerns (Exhibits EE–II) warrant liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972).

III. Background

On September 30, 2024, Petitioner entered into a Confidential Mutual Release and Settlement Agreement with Respondents Ruby Freeman and Wanda "Shaye" Moss, resolving Freeman, et al. v. Hoft, et al., Case No. 2122-CC09815-01, in the Circuit Court of St. Louis City, Missouri. The settlement, valued at over $1 million, mandates confidential arbitration by Sanford Bohrer, with discretionary use of AAA/JAMS procedural rules, application of Georgia law, and provision for prevailing party fees and costs (Exhibit B). On April 2, 2025, Respondents, through their counsel Brittany Williams of Protect Democracy, initiated arbitration, which Bohrer accepted the same day (Exhibits F, G). Respondents' attorneys alleged that Petitioner breached the agreement's confidentiality and non-disparagement terms through statements made on his podcast, The Joe Hoft Show, broadcast on Untamed, JoeHoft.com, and other platforms. Petitioner, acting pro se from St. Lucie County, Florida, paid $6,000 to Bohrer on April 11, 2025, to cover his share of arbitration costs (Exhibit R). Petitioner Hoft repeatedly requested procedural rules on April 8, 9, and 15, 2025, to understand the arbitration process. Bohrer promised rules without delivering them, citing the need for patience (Exhibits J, L, M, R).

The arbitration took place in Miami, Florida, where Mr. Bohrer is located, without a specified hearing date, and was conducted via virtual means. On May 22, 2025, Bohrer issued an award,

which was ultimately finalized on June 11, 2025 (Exhibits FF, GG). The award granted Respondents $15,000 in compensatory damages, $20,000 in punitive damages, and attorneys' fees. These fees were claimed by the Respondents' attorneys to be $47,559 but were reduced to $22,050 following Petitioner's challenge on June 5, 2025, resulting in a $25,509 reduction (Exhibits CC, DD). An additional $6,000 in arbitrator fees initially paid by the Respondents was also added, resulting in an award of $63,050 (Exhibit BB). The Petitioner disputed the award's finality on June 24, 2025 (Exhibit II). Following his decision and award on May 22, Bohrer was mostly silent after requiring Petitioner to negotiate directly with Respondents' counsel on numerous issues (Exhibit CC). On June 26, 2025, Bohrer refused further engagement, stating, "I have completed my work as arbitrator" (Exhibit II). On June 29, 2025, Petitioner notified Bohrer, Williams, and Matt Ampleman (Respondents' counsel) of his intent to seek vacatur, asserting a filing deadline of September 9, 2025, based on June 11, 2025, service date (Exhibit JJ). No response was received.

IV. Grounds for Vacatur

The arbitration award must be vacated due to Bohrer's misconduct, evident partiality, post-award conduct, and manifest disregard of Georgia law. First, Bohrer's misconduct prejudiced Petitioner's rights as a pro se litigant. Under Georgia law, arbitrator misconduct that prejudices a party's rights warrants vacatur. O.C.G.A. § 9-9-13(b)(3). In the Eleventh Circuit, an arbitrator's failure to ensure a fair hearing constitutes misconduct. *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992). Under the FAA, such misconduct includes refusing to hear material evidence or other misbehavior prejudicing a party's rights. 9 U.S.C. § 10(a)(3). Petitioner requested procedural rules on April 8, 9, and 15, 2025, to clarify the arbitration process, but Bohrer failed to provide them, despite promising delivery (Exhibits J, L, M, R; Exhibit M: "you will have all the rules you need"). This lack of guidance on timing, evidence, confidentiality, and more prejudiced Petitioner's ability to prepare (Exhibit A, Issues 1–4).

Post-award, Bohrer forced Petitioner to negotiate fees directly with Respondents' counsel and provided no assistance with the $47,559 fee claim (Exhibit CC; Exhibit A, Issues 19–20). At this time, the Petitioner shared with Bohrer that to date "the parties have used you (the arbitrator) for the most part to communicate with one another rather than directly. Now to end this arbitration, I am expected per the decision made and Mr. Ampleman's assumptions and directives, to come to an agreement with the Plaintiffs' attorneys regarding the fees that they intend to charge me for their work during the arbitration. I question the wisdom in this especially now after receiving your decision. I (the 'losing' party) am expected to be subjected to going through an itemized list discussion with the plaintiffs of what I am expected to pay to the plaintiffs (my adversary) who started this arbitration process against me in the first place. I just don't think this is a good idea."

Additionally, Bohrer exhibited evident partiality by favoring Respondents, violating O.C.G.A. § 9-9-13(b)(2). In the Eleventh Circuit, evident partiality exists when a reasonable person would conclude the arbitrator was partial to one party. *University Commons-Urbana, Ltd. v. Hansen*, 935 F.2d 1282 (11th Cir. 1991). Under the FAA, evident partiality justifies vacatur when it prejudices a party's rights. 9 U.S.C. § 10(a)(2). Bohrer issued premature warnings against statements (Exhibit I), planned rulings after limited responses (Exhibit T; Exhibit A, Issues 8–9), and proceeded despite Respondents' attorneys' failure to provide evidence (Exhibit AA; Exhibit

A, Issue 10). He ignored contradictions in Respondents' attorneys' claims about communications with their clients (Exhibits U, AA; Exhibit A, Issue 12). The Respondents' attorneys claimed that their clients "have not been contacted directly" by them, but later they changed their story, claiming "Plaintiffs and Plaintiffs' counsel discussed these statements." Bohrer ignored the change in narrative and ignored his own request that the Respondents provide "documentary support" showing their communications with their clients. It remains unknown if, and who, communicated with the Respondent clients because no evidence was ever provided, ignoring Bohrer's directive.

Bohrer's misinterpretation of key terms like "individually" and his assumption that when the Petitioner said "monsters" in a podcast that he was referring to Respondents, and his failure to define terms and instead adopted Respondents' perspective, infringed upon the Petitioner's free speech rights (Exhibit A, Issues 14–17).

Third, Bohrer's post-award conduct warrants vacatur. The award was unprofessional and possibly ghostwritten (Exhibit BB; Exhibit A, Issue 18). On June 10 (Exhibits EE and FF, Issue 21), when the Petitioner again raised the issue of no rules and questioned the finality of the issues identified in the arbitration, Bohrer responded in part, that "it is not appropriate for me to comment." Also, his fees order was amateurish (Exhibit GG; Exhibit A, Issue 22). This conduct reinforces misconduct and partiality activities, justifying vacatur under O.C.G.A. § 9-9-13(b), *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992), *University Commons-Urbana, Ltd. v. Hansen*, 935 F.2d 1282 (11th Cir. 1991), and 9 U.S.C. § 10(a)(2)–(3).

Finally, Bohrer manifestly disregarded Georgia law, which governs the Settlement Agreement (Exhibit B, § X.3). Manifest disregard occurs when the arbitrator knows of a governing legal principle but refuses to apply it. *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 647 S.E.2d 574 (2007). Bohrer disregarded Georgia's punitive damages standard, requiring specific intent for caps. O.C.G.A. § 51-12-5.1(b). He also disregarded Georgia defamation law, requiring clear identification of plaintiffs. *Cox Enterprises, Inc. v. Nix*, 274 Ga. 801, 560 S.E.2d 650 (2002); *Southern Co. v. Hamburg*, 220 Ga. App. 774, 470 S.E.2d 467 (1996); *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 555 S.E.2d 175 (2001). He omitted "individually" and failed to define terms, violating Georgia contract principles (Exhibit A, Issues 14–16).

V. Relief Sought

Petitioner respectfully requests that this Court: (1) vacate the May 22, 2025 arbitration award due, in part, to the Settlement Agreement's silence on where to file multiple actions like this motion to vacate, which has led to procedural uncertainty and parallel proceedings; (2) remand the matter for new arbitration with a different arbitrator; and (3) grant such other relief as is just and proper.

VI. Supporting Documents

Petitioner submits the following exhibits, each accompanied by a cover sheet formatted per S.D. Fla. L.R. 5.1, with Exhibit B marked "FILED UNDER SEAL PURSUANT TO S.D. FLA. L.R. 5.4(b)" where applicable:

- Exhibit A: Issues List.
- Exhibit B: Settlement Agreement (September 30, 2024, redacted).
- Exhibit C: Notice of breach and response (February 14, 20, 2025).
- Exhibit D: Burns warning (March 4, 2025).
- Exhibit E: Randazza correspondence (March 5, 2025).
- Exhibit F: Arbitration initiation (April 2, 2025).
- Exhibit G: Bohrer acceptance (April 2, 2025).
- Exhibit H: Hoft time request (April 3, 2025).
- Exhibit I: Bohrer conditions (April 3, 2025).
- Exhibit J: Hoft position paper (April 8, 2025).
- Exhibit K: Bohrer procedure outline (April 9, 2025).
- Exhibit L: Hoft requests payment details and rules (April 9, 2025).
- Exhibit M: Bohrer requests $6,000, no rules (April 10, 2025).
- Exhibit N: Bohrer asks if sharing position paper is okay (April 10, 2025).
- Exhibit O: Hoft advises holding off (April 10, 2025).
- Exhibit P: Bohrer agrees to hold off (April 10, 2025).
- Exhibit Q: Hoft notes paper already shared (April 10, 2025).
- Exhibit R: Hoft requests rules again (April 15, 2025).
- Exhibit S: Williams responds to position paper (April 15, 2025).
- Exhibit T: Bohrer plans arbitration meeting (April 16, 2025).
- Exhibit U: Bohrer asks additional questions (April 17, 2025).
- Exhibit V: Hoft rebuttal (April 18, 2025).
- Exhibit W: Williams surrebuttal (April 22, 2025).
- Exhibit X: Bohrer responds to surrebuttal notice (April 24, 2025).
- Exhibit Y: Hoft Rebuttal to Brittany Surrebuttal (April 29, 2025).
- Exhibit Z: Bohrer ready to rule (April 30, 2025).
- Exhibit AA: Ampleman says orals unnecessary (May 1, 2025).
- Exhibit BB: Arbitration Award (May 22, 2025).
- Exhibit CC: Hoft fee challenge (June 5, 2025).
- Exhibit DD: Ampleman total change (June 9, 2025).
- Exhibit EE: Hoft concerns (June 10, 2025).
- Exhibit FF: Bohrer refuses concerns (June 11, 2025).
- Exhibit GG: Bohrer fees document (June 11, 2025).
- Exhibit HH: Hoft finality response (June 12, 2025).
- Exhibit II: Bohrer work finished (June 26, 2025).
- Exhibit JJ: Intent to vacate (June 29, 2025).
- Exhibit KK: Summons and Petition to Confirm Arbitration Award (October 9, 2025).
- Exhibit LL: Ampleman Email Confirmation of Receipt, Dated September 16, 2025.

VII. Motion for Preliminary Injunction

Petitioner moves for a preliminary injunction to enjoin the state court action in the Superior Court of DeKalb County, Georgia (Case No. 25CV2904), and states:

1. **Likelihood of Success on the Merits**: Petitioner has demonstrated grounds for vacatur under O.C.G.A. § 9-9-13(b) and 9 U.S.C. § 10(a), including arbitrator misconduct, evident partiality, post-award conduct, and manifest disregard of law, as detailed above. *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992), supports vacatur for procedural unfairness.
2. **Irreparable Harm**: Confirmation of the award in Georgia would enforce an invalid award, causing irreparable financial and reputational harm pending federal resolution. Petitioner only learned of the state action on October 9, 2025, a month after the federal filing, due to Respondents' delay.
3. **Balance of Equities**: Petitioner's timely federal filing (September 9, 2025) precedes the Georgia action (filed September 24, 2025), favoring federal jurisdiction under the "first-to-file" rule. The Settlement Agreement's silence on where to file multiple actions, including a motion to vacate, further supports this Court's authority to resolve the dispute, as Respondents' initiation of a parallel Georgia action exploits this ambiguity.
4. **Public Interest**: Upholding federal arbitration review under the FAA serves judicial efficiency and interstate commerce.

WHEREFORE, Petitioner requests a preliminary injunction enjoining the Georgia action and an expedited hearing.

WHEREFORE, Petitioner respectfully requests that this Court vacate the arbitration award and grant the relief sought.

Dated: October 14, 2025 Respectfully submitted, /s/ Joe Hoft Joe Hoft, pro se 8750 South Ocean Drive, Unit 534 Jensen Beach, FL 34957 772-618-3512 jwhoft@gmail.com

Certificate of Service: I certify that on October 14, 2025, a copy of this motion, the Memorandum of Law in Support of Motion to Vacate Arbitration Award, the Motion for Preliminary Injunction, and Exhibits KK and LL was served on Brittany Williams, Protect Democracy, 2020 Pennsylvania Ave. NW, #163, Washington, DC 20006, brittany.williams@protectdemocracy.org, and Matt Ampleman, Dowd Bennett LLP, 7676 Forsyth Blvd., Suite 1900, St. Louis, MO 63105, mampleman@dowdbennett.com, via email and U.S. Mail, certified with return receipt requested, per 9 U.S.C. § 12 and Fed. R. Civ. P. 5(b). Exhibits A–JJ were previously filed and served on September 9, 2025, with proof of service filed on September 19, 2025. /s/ Joe Hoft

# Memorandum of Law in Support of Motion to Vacate Arbitration Award

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION CASE NO.: 25-CV-14328-SMM

JOSEPH HOFT, Petitioner,

v.

RUBY FREEMAN and WANDA "SHAYE" MOSS, Respondents.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD

Petitioner Joseph Hoft, appearing pro se, submits this Memorandum of Law in support of his Motion to Vacate the arbitration award issued on May 22, 2025, by Arbitrator Sanford Bohrer. This motion was originally filed in this Court on September 9, 2025, under Case No. 25-CV-14328-SMM, within the 90-day deadline under O.C.G.A. § 9-9-13(e) and 9 U.S.C. § 10 from the award's service on June 11, 2025 (Exhibit JJ), and is refiled on October 14, 2025, to address new developments. Proof of service for the original filing was filed on September 19, 2025, with certified mail receipts received and attorneys Matt Ampleman and Brittany Williams acknowledging electronic files on September 16, 2025 (Exhibit LL). The arbitration was performed pursuant to the Settlement Agreement's dispute resolution provision (Exhibit B, § X.3). The Settlement Agreement specifies that "any claim arising from the Joseph Hoft Statements will be subject to Georgia Law" which indicates this case is pursuant to Georgia Arbitration Code, O.C.G.A. § 9-9-13. The Settlement Agreement is silent on conducting the arbitration based on the Federal Arbitration Act (FAA), 9 U.S.C. § 10; however, the FAA applies in federal courts and state courts when the dispute involves federal question jurisdiction or diversity jurisdiction with an interstate commerce nexus. Due to reasons noted in the Motion to Vacate, the Federal Arbitration Act is applicable. The Petitioner's motion is based on grounds of arbitrator misconduct, evident partiality, post-award conduct warranting vacatur, and manifest disregard of the law. The facts and legal arguments supporting these grounds are set forth below, with authorities presented under Georgia law, Eleventh Circuit precedent, and the FAA, respectively.

I. Legal Standard

The Georgia Arbitration Code provides grounds for vacatur, including arbitrator misconduct, evident partiality, and manifest disregard of the law. O.C.G.A. § 9-9-13(b). Courts may also vacate an award under Georgia law for manifest disregard where the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and the law ignored was well-defined, explicit, and clearly applicable. *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 647 S.E.2d 574 (2007). The Eleventh Circuit applies the FAA to interstate disputes like this one, involving parties from multiple states. *Gulfstream Aerospace Corp. v. Oceltip Aviation 1 Pty Ltd.*, 20 F.4th 178 (11th Cir. 2021). Under the FAA, a federal court may vacate an arbitration award where the award was procured by corruption, fraud, or undue means; where

there was evident partiality or corruption in the arbitrators; where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of a party were prejudiced; or where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)–(4). The Settlement Agreement's silence on where to file multiple actions, including a motion to vacate, underscores the need for federal oversight to resolve this ambiguity and ensure a fair process. As a pro se litigant, Petitioner's filings are entitled to liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972).

II. Arbitrator Misconduct

The arbitration award should be vacated due to Bohrer's misconduct in failing to provide promised procedural rules, which prejudiced Petitioner's rights as a pro se litigant facing experienced counsel. Under Georgia law, arbitrator misconduct that prejudices a party's rights warrants vacatur. O.C.G.A. § 9-9-13(b)(3). In the Eleventh Circuit, misconduct occurs when an arbitrator's actions deprive a party of a fair hearing. *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992). Under the FAA, such misconduct includes refusing to hear material evidence or other misbehavior prejudicing a party's rights. 9 U.S.C. § 10(a)(3). The Petitioner repeatedly requested procedural rules on April 8, 9, and 15, 2025, to understand the process (Exhibits J, L, R; Exhibit A, Issue 1). Bohrer promised to provide them (Exhibit M) but never did, asking for patience instead (Exhibit M: "you will have all the rules you need"). This failure left Petitioner without guidance on timing, evidence, and confidentiality, causing ambiguity that prejudiced his ability to prepare and respond (Exhibit A, Issues 1–4).

Bohrer's premature sharing of Petitioner's position paper with Respondents' attorneys without prior consent further compounded the misconduct (Exhibits K, N, O, P, Q; Exhibit A, Issue 5). Bohrer asked Petitioner if he had "any objection" to sharing the Petitioner's email with the Respondents and, when the Petitioner responded that it may be best to hold off, Bohrer stated, "I will hold off sharing your email then." The Petitioner then noticed that Bohrer had already shared the email with the Respondents.

Additionally, the lack of response rights and protocols for the virtual meeting prejudiced Petitioner (Exhibit T; Exhibit A, Issues 6–7). Bohrer asked Respondents' attorneys to set up a conference call, but no minutes were taken, and Petitioner was left not knowing if a transcript was prepared or a video copy produced, and no assurances were given that the meeting was private and that others were not observing the meeting.

Perhaps the most egregious action taken by Bohrer was his inaction. Post-award, Bohrer forced fee negotiations without rules and provided no assistance. In a $47,559 fee claim (Exhibit CC; Exhibit A, Issues 19–20) provided by the Respondents' attorneys, the Petitioner was left to fend for himself. He shared with Bohrer at that time that to date "the parties have used you (the arbitrator) for the most part to communicate with one another rather than directly. Now to end this arbitration, I am expected per the decision made and Mr. Ampleman's (Respondent Attorney's) assumptions and directives to come to an agreement with the plaintiffs' attorneys regarding the fees that they intend to charge me for their work during the arbitration. I question

the wisdom in this especially now after receiving your decision. I (the 'losing' party) am expected to be subjected to going through an itemized list discussion with the plaintiffs of what I am expected to pay to the plaintiffs (my adversary) who started this arbitration process against me in the first place. I just don't think this is a good idea."

Next, on June 10 (Exhibits EE and FF, Issue 21), when the Petitioner again raised the issue of no rules and questioned the finality of the issues identified in the arbitration, Bohrer responded in part, that "it is not appropriate for me to comment."

These actions constitute misconduct warranting vacatur under O.C.G.A. § 9-9-13(b)(3), *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992), and 9 U.S.C. § 10(a)(3).

III. Evident Partiality

Bohrer displayed evident partiality by favoring Respondents, while prejudicing Petitioner. Under Georgia law, evident partiality by an arbitrator is grounds for vacatur. O.C.G.A. § 9-9-13(b)(2). In the Eleventh Circuit, evident partiality exists when a reasonable person would have to conclude that the arbitrator was partial to one party. *University Commons-Urbana, Ltd. v. Hansen*, 935 F.2d 1282 (11th Cir. 1991). Under the FAA, evident partiality justifies vacatur when it prejudices a party's rights. 9 U.S.C. § 10(a)(2). Bohrer issued premature warnings against statements (Exhibit I) and planned rulings after limited responses (Exhibit T; Exhibit A, Issues 8–9). He ruled despite Respondents' attorneys' evidentiary failures (Exhibit AA) and ignored contradictions in their claims about communications with their clients (Exhibits U, AA; Exhibit A, Issue 12).

Bohrer requested whether the Respondents' attorneys had communicated with their clients about the arbitration and to provide support for these communications. The Respondents' attorneys claimed that the Respondents "have not been contacted directly" and provided no support for their statement. The Petitioner shared after seeing this that "This admission reveals that Freeman and Moss appear to be wholly unaware of my statements, yet counsel initiated a proceeding asserting harm and damages without even consulting their clients" (Exhibit Y).

The Respondents' attorneys then changed their story, claiming "Plaintiffs and Plaintiffs' counsel discussed these statements" yet they never provided evidence to support this statement as Bohrer had requested. Bohrer ignored this change in narrative and ignored his own request that the Respondents' attorneys provide "documentary support" for their statements that he previously asked for. Who communicated with the Plaintiffs and support for communications was never provided.

In addition, Bohrer's misinterpretation of key terms like "individually," and his assumption that the Petitioner's use of the word "monsters" in a podcast referred to Respondents without asking the Petitioner, showed more bias. His failure to define terms in the Settlement Agreement while adopting the Respondents' view also indicated bias (Exhibit A, Issues 14–16). This bias ultimately infringed upon the Petitioner's free speech rights (Exhibit A, Issue 17). These actions demonstrate evident partiality under O.C.G.A. § 9-9-13(b)(2), *University Commons-Urbana, Ltd. v. Hansen*, 935 F.2d 1282 (11th Cir. 1991), and 9 U.S.C. § 10(a)(2).

IV. Post-Award Conduct

Bohrer's post-award conduct further warrants vacatur. The award was unprofessional and possibly ghostwritten (Exhibit BB; Exhibit A, Issue 18). Bohrer refused to address finality, third-party content, and Georgia law concerns raised by Petitioner (Exhibits EE, FF, HH, II; Exhibit A, Issue 21). The fees order produced on June 11 was amateurish (Exhibit GG; Exhibit A, Issue 22) and looked like something slapped together in a matter of minutes. This conduct reinforces the misconduct and partiality, justifying vacatur under O.C.G.A. § 9-9-13(b), *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992), *University Commons-Urbana, Ltd. v. Hansen*, 935 F.2d 1282 (11th Cir. 1991), and 9 U.S.C. § 10(a)(2)–(3).

V. Manifest Disregard of Law

Bohrer manifestly disregarded Georgia law, which governs the Settlement Agreement (Exhibit B, § X.3). Manifest disregard occurs when the arbitrator knows of a governing legal principle but refuses to apply it. *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 647 S.E.2d 574 (2007). Bohrer disregarded Georgia's punitive damages standard, requiring specific intent for caps. O.C.G.A. § 51-12-5.1(b). He also disregarded Georgia defamation law, requiring clear identification of plaintiffs. *Cox Enterprises, Inc. v. Nix*, 274 Ga. 801, 560 S.E.2d 650 (2002); *Southern Co. v. Hamburg*, 220 Ga. App. 774, 470 S.E.2d 467 (1996); *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 555 S.E.2d 175 (2001).

In response to the Respondents' attorneys' surrebuttal, the Petitioner outlined the issues claimed to have been in violation of the Settlement Agreement (Exhibits C, Y; Exhibit A, Issue 16) and discussed how Georgia law applied to the issues behind the arbitration. This entire argument was ignored by Bohrer in his decision (Exhibit BB): Counsel's assertion that my statements are "about or concerning" the plaintiffs misapplies Georgia law by equating general terms like "water main break," "Giuliani," or "lawsuits" with naming them individually. *Cox Enterprises, Inc. v. Nix*, 274 Ga. 801, 560 S.E.2d 650 (2002), requires statements to "specifically refer" to the plaintiff or be so closely associated that a reasonable person would unmistakably identify them. My statements on The Joe Hoft Show (e.g., November 21, 2024, January 15, 2025) discuss election litigation and Giuliani's legal battles without naming or describing the Plaintiffs. The Plaintiffs' claim that my reference to a "$148 million judgment" (Pg. 2) identifies them misrepresents my statement, which focused on the judge's actions against Giuliani, not the Plaintiffs. Their interpretation distorts *Cox Enterprises*, which rejected liability for ambiguous references. However, their publication about the Giuliani verdict would be a breach of the Settlement's provision to not publish any statement regarding the "Plaintiffs, primarily" because they do identify the plaintiffs in their report. *Southern Co. v. Hamburg*, 220 Ga. App. 774, 470 S.E.2d 467 (1996), requires statements to be construed as ordinary readers would understand them, finding defamation only for explicit naming (Pg. 3). My generalized statements lack such targeting, and the Plaintiffs' claim that my audience "knows who [I'm] talking about" (Pg. 3) is speculative, as they admit lacking audience data (Pg. 1). For example, my website allows readers to leave comments. Zero proof has been provided in the comments that the undersigned is clearly speaking about the Plaintiffs. *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 555 S.E.2d 175 (2001), underscores the high bar for liability in public controversies, requiring actual malice, which the Plaintiffs fail to show. Counsel's omission of the Settlement Agreement's no-

liability clause—which states the "Parties' entry into this Agreement does not constitute an admission of liability on the part of any party"—while falsely claiming I defamed them (Pg. 2), is dishonest and unprofessional, further evidencing their bad-faith campaign. Bohrer omitted "individually" from the Settlement Agreement terms in his decision and failed to define key terms, violating Georgia contract interpretation principles (Exhibit A, Issues 14–16). This manifest disregard under O.C.G.A. § 9-9-13(b)(5) requires vacatur.

VI. Conclusion

The arbitration award should be vacated due to Bohrer's misconduct, evident partiality, post-award conduct, and manifest disregard of Georgia law. The Settlement Agreement's silence on where to file multiple actions, including this motion to vacate, exacerbates the procedural uncertainty and supports vacatur to rectify the lack of clear guidance. Petitioner's pro se status and good-faith efforts (Exhibits CC–JJ) warrant liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). The Court should grant the Motion to Vacate and the requested relief.

VII. Motion for Preliminary Injunction

Petitioner moves for a preliminary injunction to enjoin the state court action in the Superior Court of DeKalb County, Georgia (Case No. 25CV2904), and states:

1. **Likelihood of Success on the Merits**: Petitioner has demonstrated grounds for vacatur under O.C.G.A. § 9-9-13(b) and 9 U.S.C. § 10(a), including arbitrator misconduct, evident partiality, post-award conduct, and manifest disregard of law, as detailed above. *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992), supports vacatur for procedural unfairness.
2. **Irreparable Harm**: Confirmation of the award in Georgia would enforce an invalid award, causing irreparable financial and reputational harm pending federal resolution. Petitioner only learned of the state action on October 9, 2025, a month after the federal filing, due to Respondents' delay.
3. **Balance of Equities**: Petitioner's timely federal filing (September 9, 2025) precedes the Georgia action (filed September 24, 2025), favoring federal jurisdiction under the "first-to-file" rule. The Settlement Agreement's silence on where to file multiple actions, including a motion to vacate, further supports this Court's authority to resolve the dispute, as Respondents' initiation of a parallel Georgia action exploits this ambiguity.
4. **Public Interest**: Upholding federal arbitration review under the FAA serves judicial efficiency and interstate commerce.

WHEREFORE, Petitioner requests a preliminary injunction enjoining the Georgia action and an expedited hearing.

WHEREFORE, Petitioner respectfully requests that this Court vacate the arbitration award and grant the relief sought.

Dated: October 14, 2025 Respectfully submitted, /s/ Joe Hoft Joe Hoft, pro se 8750 South Ocean Drive, Unit 534 Jensen Beach, FL 34957 772-618-3512 jwhoft@gmail.com

Certificate of Service: I certify that on October 14, 2025, a copy of this motion, the Memorandum of Law in Support of Motion to Vacate Arbitration Award, the Motion for Preliminary Injunction, and Exhibits KK and LL was served on Brittany Williams, Protect Democracy, 2020 Pennsylvania Ave. NW, #163, Washington, DC 20006, brittany.williams@protectdemocracy.org, and Matt Ampleman, Dowd Bennett LLP, 7676 Forsyth Blvd., Suite 1900, St. Louis, MO 63105, mampleman@dowdbennett.com, via email and U.S. Mail, certified with return receipt requested, per 9 U.S.C. § 12 and Fed. R. Civ. P. 5(b). Exhibits A–JJ were previously filed and served on September 9, 2025, with proof of service filed on September 19, 2025. /s/ Joe Hoft

**From:** jwhoft@gmail.com <jwhoft@gmail.com>
**Sent:** Tuesday, April 8, 2025 9:46 PM
**To:** 'Sanford Bohrer' <sandy.bohrer@gmail.com>
**Cc:** jwhoft@gmail.com
**Subject:** Position Paper in Defense of Joseph Hoft

Position Paper in Defense of Joseph Hoft

Re: Freeman et al. v. Hoft et al., Case No. 2122-CC09815

Arbitration Before Sanford Bohrer

Date: April 8, 2025

To: Sanford Bohrer, Arbitrator

Dear Mr. Bohrer,

In your email on Thursday, April 3, 2025, you noted three things in response to my request for time to respond to your requests due to traveling this past weekend.

(1) you refrain from saying writing or doing anything that might be construed to be a violation of the settlement agreement - I assure you based on information below that I have not violated the settlement agreement in any way

(2) on Friday you provide the response you gave as provided in the settlement agreement – I am providing you the communications you requested here today, and

(3) Plaintiffs do not object – which is the case.

In response to another question, please note that I intend to represent myself in this matter.

Also, can you please provide me the arbitration rules for this engagement. This would be very helpful.

Here is my position in defense of myself:

I, Joseph Hoft, submit this position paper in my own defense against the claims asserted by Ruby Freeman and Wandrea Moss ("Plaintiffs") and their counsel, as

outlined in the February 14, 2025, and March 6, 2025, letters from Matt D. Ampleman of Dowd Bennett LLP, and the notice of violation from Brittany Williams. Plaintiffs allege that I have violated Section III.4 of the Confidential Mutual Release and Settlement Agreement ("Agreement"), executed on September 30, 2024, by making statements "about or concerning" them. They seek declarative relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees. I contend that these claims lack merit, the alleged violations do not constitute material breaches of the Agreement, and the remedies sought are unwarranted. My position is detailed below.

## I. Overview of the Agreement and My Obligations

The Agreement, fully executed on September 30, 2024, resolved all claims and counterclaims between the Parties arising from the Lawsuit (Case No. 2122-CC09815) and related disputes concerning the 2020 presidential election at State Farm Arena. Under Section III.4, I agreed not to "make any further publication about or concerning Plaintiffs, individually," whether on The Gateway Pundit or elsewhere. However, the Agreement explicitly states that I am not responsible for publications by third parties outside my power and control, nor for contributing to such publications unless I directly do so. Section X.1 further provides that any claim for breach must be "material and not de minimis," and I am entitled to notice and seven days to cure breaches within my control, with such cure serving as a complete defense.

## II. My Compliance with the Agreement

Plaintiffs assert that I violated Section III.4 through statements made between November 6, 2024, and January 15, 2025, as detailed in their February 14, 2025, letter. These statements are categorized as: (1) comments regarding Rudy Giuliani's defamation case, (2) references to Plaintiffs' lawsuit against me and TGP Communications, LLC ("TGP"), and (3) mentions of a "water main break" in the context of the 2020 election. I maintain that these statements do not constitute material breaches of the Agreement for the following reasons:

## A. Absence of Direct Reference to Plaintiffs

Section III.4 prohibits publications "about or concerning Plaintiffs, individually." None of the challenged statements explicitly identifies Ruby Freeman or Wandrea Moss. Consider the following:

- Statements Regarding Giuliani: Remarks such as "They went after him for sharing the truth" (November 18, 2024) or "he's been under attack from these monsters" (November 21, 2024) pertain solely to Giuliani's circumstances. They contain no mention of Plaintiffs' names or identifiable characteristics, focusing instead on his legal challenges, not Freeman or Moss.

- References to the Lawsuit: Statements like "I've been sued for defamation when I believe everything I ever said was accurate" (December 5, 2024) address my personal

legal experiences without naming Plaintiffs. On January 15, 2025, I explicitly stated, "I'm not going to mention any names, because we did a settlement. I promised I wouldn't say their names anymore," demonstrating my adherence to the Agreement.

- Water Main Break References: Mentions of a "water main break" (e.g., "I kept waiting for the water main break" on November 6, 2024) describe events from the 2020 election night in Georgia without individualized reference to Plaintiffs. This term has become a recognized phrase in public discourse regarding perceived election irregularities, independent of Freeman or Moss.

The inclusion of "individually" in Section III.4 indicates a requirement for specific, identifiable references to Plaintiffs. My consistent avoidance of their names or direct identifiers aligns with a reasonable interpretation of my obligations, rendering any alleged violation de minimis rather than material.

 B. Statements Beyond My Control

Numerous challenged statements were published on platforms I neither own nor control, such as "The Untamed Truth" podcast (e.g., November 18, 20, 21, 2024) and Rumble (January 1, 2025). I do not own "The Untamed Truth," and Section III.4 expressly absolves me of responsibility for third-party publications outside my "power and control." Although I may have participated as a guest or contributor, the publication and hosting of these episodes are managed by third parties. The seven-day cure provision in Section X.1 applies only to content within my authority, such as [JoeHoft.com](JoeHoft.com). Plaintiffs' February 14, 2025, letter acknowledges my removal of statements from [JoeHoft.com](JoeHoft.com) (e.g., the December 24, 2024, post), confirming my compliance where I have jurisdiction. Their demand for removal from third-party platforms exceeds the scope of my obligations under the Agreement.

 C. Lack of Material Breach

Section X.1 mandates that any breach be "material and not de minimis." Even if the statements are interpreted as indirectly concerning Plaintiffs, they are incidental and lack the substance or impact to constitute a material violation. They do not republish the specific defamatory allegations from the Lawsuit (e.g., that Plaintiffs "faked a water main break" or "stuffed ballots in suitcases"), which Section III.3 addressed. Rather, they reflect my views on broader election-related matters or my own legal experiences. There is no evidence of direct harm to Plaintiffs beyond speculative inference, underscoring the de minimis nature of any alleged breach. The Agreement's stated purpose in Section II—to resolve disputes amicably and avoid litigation—does not extend to prohibiting my general commentary on public events.

 III. My Good-Faith Efforts to Address Plaintiffs' Concerns

I have demonstrated a steadfast commitment to complying with the Agreement, as evidenced by my proactive efforts to address Plaintiffs' concerns, even when I contest

their interpretation of my obligations. The email correspondence with Matt Ampleman from February 20, 2025, to March 31, 2025, substantiates this:

 A. Coordination with Untamed Nation

- Initial Action: On February 20, 2025, I informed Mr. Ampleman that I had removed videos from [JoeHoft.com](JoeHoft.com) in response to the February 14 notice, despite my belief that Plaintiffs' interpretation of the Agreement is overly expansive. By March 7, 2025, I had contacted the management of Untamed Truth, provided them with the February 14 list, and secured their commitment to remove the identified statements.

- Continued Engagement: On March 24, 2025, I reported that Joe Oltmann of Untamed Nation was in the process of removing the specified segments, and by March 28, 2025, I confirmed that all listed videos had been taken down from that platform. When Mr. Ampleman asserted on March 31, 2025, that 14 videos remained online, I promptly contacted Mr. Oltmann on April 1, 2025, requesting specific URLs to identify the outstanding content, as I had been advised that the February 14 items were fully addressed.

- Exceeding Obligations: These efforts surpass my duties under Section III.4, which exempts me from liability for third-party publications beyond my control. My voluntary coordination with Untamed Nation—a platform I do not own—reflects my good-faith intent to mitigate Plaintiffs' concerns, not an acknowledgment of breach.

 B. Specific Rebuttals to Each Allegation

In my February 20, 2025, email, I provided detailed responses to each of Plaintiffs' allegations, asserting that my statements do not violate the Agreement:

- Giuliani Statements (e.g., November 18, 20, 21, 25, December 24, 2024): I explained that these remarks focus on Rudy Giuliani's legal challenges—e.g., "They went after him for sharing the truth" or references to his $148 million judgment—and do not mention Freeman or Moss. I emphasized that such statements address "lawfare" against Giuliani, not Plaintiffs individually.

- Lawsuit References (e.g., December 5, 13, January 1, 15, 2025): I clarified that these statements pertain to my own legal proceedings—e.g., "I've been sued for defamation when I believe everything I ever said was accurate"—without identifying Plaintiffs. My January 15, 2025, remark, "I promised I wouldn't say their names anymore," underscores my compliance.

- Water Main Break Comments (e.g., November 6, 12, 13, 14, 20, 29, December 12, January 1, 2025): I contested Plaintiffs' assertion that mentioning "water main break" equates to referencing them, deeming it an "excessive" interpretation. I noted that these statements—e.g., "I kept waiting for the water main break"—reflect my 2020 election

night experience, not Plaintiffs, and that the phrase is a widely recognized term not uniquely tied to them.

- Historical Claims: I disputed Plaintiffs' characterization of prior Gateway Pundit articles (e.g., December 4, 7, 2020), stating, "I don't believe we ever reported that R&S were behind the fake water main story," and affirmed that I have refrained from such assertions post-Agreement.

These rebuttals, combined with my removal efforts, demonstrate my dedication to honoring the Agreement while challenging Plaintiffs' broad construction of Section III.4.

 C. Verification of Content Removal and Request for Arbitrator Review

In addition, in my due diligence I consulted with Untamed Nation's technical support team, who affirmed that the URLs listed in Exhibit A—all associated with "The Untamed Nation" podcast and related platforms (e.g., conservative-daily.com, rumble.com, podbean.com)—now redirect to a homepage where none of the videos cited in the February 14 letter are accessible. This aligns with my March 28, 2025, confirmation to Mr. Ampleman that all listed videos had been removed from Untamed Nation, and my subsequent April 1, 2025, inquiry seeking specific URLs to address any discrepancies.

Per an additional review this week, the Untamed Nation's technical support team informed me that the URLs that they received were related to the Conservative Daily website which was the precursor of the Untamed Nation site.  They deleted the videos from that site but realized that the videos were pushed to Untamed Nation during the website cutover.  They confirm that the videos were eliminated from the Untamed site as well.

I respectfully request that you, as Arbitrator, independently verify this by accessing the URLs in Exhibit A to determine whether the content in question remains available. Such a straightforward review could confirm my compliance and obviate the need for an expensive proceeding, sparing me and the plaintiffs unjust financial burden.

One unique video targeted by the plaintiff's attorneys in their February 14th email is related to an interview I had on Rumble. This video is still available at that site.  During this interview I made no mention of the plaintiff's, individually, and I am not a contributor on that site.

IV. Plaintiffs' Weaponization of the Agreement Against My Journalistic Rights

I submit that Plaintiffs are exploiting the Agreement to unjustly restrict my ability to report news as a journalist, an action that abuses its express provisions. Section III.4 prohibits publications "about or concerning [Plaintiffs], individually." It does not preclude me from discussing Rudy Giuliani, my own legal matters, or the 2020 election generally. Yet, Plaintiffs assert that statements lacking any direct reference to them—or at most constituting de minimis deviations—violate the Agreement. This expansive interpretation

seeks to silence my coverage of significant public issues, effectively weaponizing a narrowly tailored provision beyond its intended scope.

As a journalist, my work involves analyzing elections, legal proceedings, and notable figures like Giuliani. The Agreement's language, negotiated and signed by all Parties, limits its restriction to statements specifically about Freeman and Moss as individuals. If Plaintiffs intended to impose broader constraints on my speech—encompassing tangential references to related events or persons—they were obligated to draft more precise and comprehensive terms. They did not. Their immediate resort to arbitration over alleged violations that I have actively sought to cure, as detailed above, contravenes the Agreement's purpose of good-faith resolution (Section II) and imposes an undue burden on my professional activities.

Moreover, the costs and fees associated with this arbitration should weigh heavily in your consideration. I have diligently endeavored to address Plaintiffs' concerns—removing content from [JoeHoft.com](JoeHoft.com), coordinating with Untamed Nation, and verifying removal with technical support—yet they have proceeded with this action without allowing reasonable time for resolution. Section X.2 provides for an award of reasonable attorneys' fees, expenses, and arbitration costs to the "prevailing party." Given my efforts to comply and the absence of material breaches, I respectfully request that such costs and fees be awarded to me, rather than Plaintiffs, as a deterrent to this misuse of the arbitration process. Had Plaintiffs desired greater restrictions on my journalistic expression, they should have ensured that the Agreement's language explicitly reflected such intent.

V. Rebuttal of Plaintiffs' Specific Claims

 A. Declarative Relief

Plaintiffs seek a declaration that my statements breached the Agreement. As established, these statements do not satisfy the criterion of being "about or concerning Plaintiffs, individually," nor do they rise to the level of material breaches. My efforts to cure, my specific rebuttals, and the potential inaccessibility of the content (pending your verification) negate any basis for such a declaration, which requires clear evidence of intentional, specific violations within my control.

 B. Injunctive Relief

Plaintiffs request an injunction compelling me to remove statements from all platforms under my control. I have already removed content from [JoeHoft.com](JoeHoft.com) (February 20, 2025) and engaged with Untamed Nation to address third-party content, despite no obligation to do so. Their March 31, 2025, assertion that 14 videos remain online lacks specificity (e.g., no URLs provided), impeding further action, and all videos are no longer available at Untamed Nation. Injunctive relief is unnecessary and exceeds the Agreement's terms given my demonstrated compliance and the need for your confirmation of the URLs' status.

## C. Compensatory Damages

Plaintiffs propose $2,000 per statement as compensatory damages. While Section III.4 empowers you to determine damages for violations, no evidence justifies this figure. My rebuttals demonstrate the statements' lack of direct reference to Plaintiffs, and my curative efforts—potentially validated by your URL review—mitigate any harm, rendering compensatory damages inappropriate.

## D. Punitive Damages

Plaintiffs seek punitive damages to deter future violations. Section III.4 permits this for "multiple violations," but only if reasonably calculated to deter. My good-faith actions— removing content, avoiding Plaintiffs' names, and verifying removal with technical support—evidence no willful pattern of breach. Punitive damages are unwarranted absent proof of bad faith or repeated, material violations.

## E. Attorneys' Fees and Costs

Plaintiffs request their attorneys' fees and arbitration costs. Section X.2 awards such relief only to the "prevailing party." Given my compliance, rebuttals, and the lack of material breach—coupled with their failure to verify content removal and misuse of the Agreement—I assert that I am entitled to prevail and recover my costs and fees.

## VI. Conclusion

I have adhered to the Agreement in good faith. My statements do not directly reference Plaintiffs, many are published on platforms beyond my control, and any alleged violations are, at most, de minimis rather than material. I have removed content within my authority, collaborated with Untamed Nation, provided detailed rebuttals, and confirmed with technical support that the cited URLs no longer host the content in question—a fact I urge you to verify before proceeding. Plaintiffs' attempt to leverage the Agreement to curtail my journalistic activities exceeds its express terms, and their pursuit of arbitration despite my curative efforts multiple times since early March when requested to do so warrants an award of costs and fees in my favor. I respectfully request that you deny Plaintiffs' claims in their entirety and grant me reasonable attorneys' fees and costs as the prevailing party under Section X.2.

Respectfully submitted,

Joseph Hoft

Per your request on April 3, 2025, below is a list of responses I provided to Plaintiffs with pdfs of emails attached leading up to their request for arbitration on April 2, 2025.

**Exhibit A: URLs Verified with Untamed Nation Technical Support are included in my response to Mr. Ampleman in an email dated February 20, 2025. All URLs referred to plaintiff attorneys are included in this email. See attached.

**Exhibit B: Response dated March 10, 2025 to Mr. Ampleman's email dated March 6, 2025.  See attached.

**Exhibit C: Response dated March 24, 2025 to Mr. Ampleman's email dated March 19, 2025. See attached.

**Exhibit D: Response dated March 28, 2025 to Mr. Ampleman's email dated March 25, 2025. See attached.

**Exhibit E: Response dated April 1, 2025 to Mr. Ampleman's email dated March 31, 2025. See attached.

**Exhibit F: Email dated April 1, 2025 to Joe Oltmann regarding links ccing Mr. Ampleman

**From:** jwhoft@gmail.com <jwhoft@gmail.com>
**Sent:** Wednesday, April 9, 2025 9:37 PM
**To:** 'Sandy Bohrer' <sandy.bohrer@gmail.com>
**Cc:** jwhoft@gmail.com; 'Brittany Williams' <brittany.williams@protectdemocracy.org>; 'Matt Ampleman' <mampleman@dowdbennett.com>
**Subject:** RE: Position Paper in Defense of Joseph Hoft

Mr. Bohrer,

In regard to 8 below, who is it that you are directing this payment amount to?
In regard to 7 below, I request that the rules behind this arbitration be spelled out at this time.  I hope you understand.  I have always played by the rules and in this case, I don't know what they are.  A detailed inventory is necessary for me to understand this entire process.   For example, are there standard rules for arbitration that you expect we all comply with and what are they?  What deviations will you recommend?  Etc.

Thank you very much for your understanding,

Joe Hoft

**From:** Sanford Bohrer <sandy.bohrer@gmail.com>
**Sent:** Thursday, April 10, 2025 9:14 AM
**To:** jwhoft@gmail.com
**Cc:** Brittany Williams <brittany.williams@protectdemocracy.org>; Matt Ampleman
<mampleman@dowdbennett.com>
**Subject:** Re: Position Paper in Defense of Joseph Hoft

Mr. Hoft,

The Settlement Agreement says that the costs of the arbitration "shall be borne equally" by the parties. So for you, that means you have to pay me $6,000 in six days, or by next Wednesday. If you want to mail a check, such that I receive it Wednesday, the address is 6595 Killian Drive, Pinecrest Florida 33156. Plaintiffs can use the same address. If anyone wants wire information, please let me know.

The Settlement Agreement specifically rejects standardized rules, which I agree are inapplicable here. As I said in my previous email, before I can set up the process - the rules, if you wish - for the resolution of Plaintiffs' claims, I need certain information. Once I have that information - from you and Plaintiffs - I will provide you with the "rules" you seek.

So please have a little patience with me on this. By the end of next week, assuming I am timely paid, you will have all the rules you need.

Thank- you.

Sandy Bohrer

**From:** jwhoft@gmail.com <jwhoft@gmail.com>
**Sent:** Tuesday, April 15, 2025 2:47 PM
**To:** 'Sanford Bohrer' <sandy.bohrer@gmail.com>
**Cc:** jwhoft@gmail.com
**Subject:** RE: Position Paper in Defense of Joseph Hoft

Mr. Bohrer,

As an update –

Per your email last Wednesday morning, you had asked for answers to questions related to this arbitration. I believe that I addressed the questions in the position paper I provided at that time. If you have any additional questions, please let me know.

I see my check made it to your address yesterday so please let me know if any issues with that.

Any additional information on the rules going forward would be greatly appreciated.

I still have not received any information from the plaintiffs' attorneys to date in response to my paper and your questions.

Thank you,

Joe Hoft

**From:** jwhoft@gmail.com <jwhoft@gmail.com>
**Sent:** Thursday, April 10, 2025 4:28 PM
**To:** 'Sanford Bohrer' <sandy.bohrer@gmail.com>
**Cc:** jwhoft@gmail.com
**Subject:** RE: Position Paper in Defense of Joseph Hoft

Mr. Bohrer,

I looked back at yesterday morning's email and it looks like you already provided my email and attachments with Ms. Willaims and Mr. Ampleman.

So I guess this point (holding off on sharing my email and attachments) is mute unless I am misunderstanding something.

Joe Hoft

Mr. Ampleman,

To date there has been no observable set of procedures or rules that afford sufficient guidance for how this arbitration was supposed to work.

The purpose of the arbitration and settlement agreement was to afford finality in a cost-effective manner.   But because the procedural rules are not spelled out, I'm not certain that the decision provides finality in the following way:

1.  I'm not sure that the decision to date offers finality to this arbitration process.  For example, I don't have control over entities where I do not work or produce content, and I can't be held accountable for things out of my control.  I'm not sure that the award as written assures me of finalization.  It appears as it stands that you could bring back another action next week related to these things outside my control.  I also am left open to the possibility that almost any subject related to the Georgia Election of 2020 is included in your definition of items breaking the settlement agreement.  Leaving this definition so wide open also puts me at risk of this not being final.  This is an excellent time to address these issues.

2.  In addition, my understanding is that the settlement agreement mandates that Georgia law be used in interpreting issues.  The arbitrator is not a Georgia attorney and showed a lack of knowledge of Georgia law.

We need to commit to resolving these issues.  If not, I may have to evaluate appealing the decision and award.  If we can come to some sort of agreement on these matters I could potentially agree to making the amount noted below by month-end.

Sincerely,

Joe Hoft

**From:** Bohrer, Sanford L <s.bohrer@miami.edu>
**Sent:** Wednesday, June 11, 2025 2:41 PM
**To:** jwhoft@gmail.com
**Cc:** Matt Ampleman <mampleman@dowdbennett.com>; Brittany Williams <brittany.williams@protectdemocracy.org>
**Subject:** Re: [EXTERNAL] Arbitration Decision and Award

It is not appropriate for me to comment on anything Mr. Hoft has said. What is appropriate is for me to rule on the legal fees, given the lack of agreement. I am awarding Claimants $22050 in legal fees, resulting in a total due from Mr. Hoft of $63,050. I will prepare an order to that effect shortly.

**From:** jwhoft@gmail.com <jwhoft@gmail.com>
**Sent:** Tuesday, April 29, 2025 2:56 PM
**To:** 'Sanford Bohrer' <sandy.bohrer@gmail.com>
**Cc:** 'Matt Ampleman' <mampleman@dowdbennett.com>; 'Brittany Williams'
<brittany.williams@protectdemocracy.org>; jwhoft@gmail.com
**Subject:** RE: Position Paper in Defense of Joseph Hoft

Mr. Bohrer,

Attached is my response to the plaintiffs' Surrebuttal.

Sincerely,

Joe Hoft


**Reply to Plaintiffs' Surrebuttal**


**Mr. Bohrer:**

This arbitration, orchestrated by Protect Democracy, is a politically motivated effort to silence and bankrupt me, as part of a larger goal to silence and bankrupt my brother Jim Hoft, and The Gateway Pundit as well. Shockingly, counsel initiated this proceeding despite admitting in the section titled "Communications or Contact with Plaintiffs": "Plaintiffs have suffered reputational harm **but have not been contacted directly as a result of the new challenged statements**, and **we would not expect them to have been contacted**" (Pg. 1). This admission reveals that Freeman and Moss appear to be wholly unaware of my statements, yet counsel initiated a proceeding asserting harm and damages without even consulting their clients. Their briefs are high on accusation, but low on evidence, as shown by their statement that "Plaintiffs do not presently wish to submit any additional documents for consideration" (Pg. 1).

After enduring two years of slander and defamation in the mainstream media, causing me constant financial and emotional duress, I signed the Settlement Agreement in good faith, hoping to end this lawfare. Yet, counsel has manufactured violations by equating terms like "water main break," "Rudy Giuliani," or "lawsuits" with the naming of the Plaintiffs individually. They have scoured my writings and my show and interviews (approximately one hundred hours of video content between October 1, 2024 and February 14, 2025) for any pretext to claim a breach. Their failure to provide new evidence and their reliance on speculative inferences expose their bad faith. The funding of this arbitration, driven by Protect Democracy's agenda, raises many questions, as the undersigned could not imagine being sent a bill for legal services without being consulted first. I urge you to reject

their claims, as my statements are protected speech, compliant with the Settlement Agreement, and do not target the Plaintiffs.

## I. Counsel's Unilateral Arbitration Without Client Consultation Confirms Political Lawfare

This unilateral action without client consultation, bypasses the Settlement Agreement's cure provisions (requiring notice and a 7-day cure period), and reveals a campaign orchestrated by Protect Democracy. Case in point, the Agreement was meant to "avoid litigation and the associated expense" yet, what do we see?  For my part, you see a paper trail of immediate responsiveness, efforts to cure arguable *de minimus* violations, and good faith mitigation efforts to seek out third-party publishers. For the counsel's part, you see independent pursuit of arbitration without client consultation.  This violates the purpose of the Settlement Agreement and suggests bad faith.

Protect Democracy's central role here is evident from their public claims of driving high-profile litigation, including the $148 million defamation verdict against Rudy Giuliani, directly involving the Plaintiffs (https://protectdemocracy.org/ourimpact).  In a recent article Protect Democracy bragged about how Rudy Giuliani was ordered to turn over most of his property to the plaintiffs  (https://protectdemocracy.org/work/giuliani-turnover-property-ruby-freeman-shaye-moss/).

Consider this:  The Settlement Agreement states:  "The Parties, their attorneys, and their agents/representatives **shall not directly or indirectly make, publish, or cause to be made or published any statement to any third party** other than the Parties' attorneys, other professional advisors, and immediate family members, **regarding the subject matter of this Agreement**, except as described in the preceding paragraph. If inquiries are made by any third party regarding this Agreement, the Lawsuit, the Demands, or the Counterclaims, the Parties and their representatives shall state only that the dispute between the Parties has been resolved to the mutual satisfaction of the parties through a fair and reasonable settlement."

Protect Democracy brags about a verdict related to Guiliani, which relates to Plaintiffs, who have sued the undersigned.  By their own reasoning, my commentary about a judge in a case involving Guliani without mentioning the plaintiffs is a violation of the Settlement agreement and yet they boast about the plaintiffs being awarded Giuliani's possessions highlighting the plaintiffs.  They can't have their cake and eat it too.

Protect Democracy boasts of securing a court order blocking Arizona voter intimidation, when it was Protect Democracy that tried to intimidate canvassers from simply verifying accuracy of the voter rolls.  They brag about enabling Capitol Police to sue Donald Trump for January 6, shaping the 2022 Electoral Count Act to "prevent a future Congress from overturning election results."  They brag in their claim of generating 25,000 stories and

briefing 750 reporters to manufacture influence in what they deem was a "campaign that saved the 2020 election" (Time Magazine). This arbitration aligns with their pattern of targeting conservative voices, using Freeman and Moss as proxies to suppress my election integrity free speech, despite counsel's admission that my statements caused zero initiative on their part to contact their clients about the so-called harm they've suffered (Pg. 1).

My concerns about election integrity are validated by Director of National Intelligence Tulsi Gabbard's April 10, 2025, cabinet meeting statements, where she revealed, "We have evidence of how these electronic voting systems have been vulnerable to hackers for a very long time and vulnerable to exploitation to manipulate the results of the votes being cast," urging a switch to paper ballots (https://www.moneycontrol.com/news/world/tulsi-gabbard-backs-paper-ballots-claims-voting-machines-vulnerable-to-hackers-13165903.html). These findings echo my own reporting and are supported by President Trump's 2025 executive actions: a January 20, 2025, order revoking security clearances for 49 former officials that peddled the now widely discredited Russia Hoax story, including Antony Blinken and Jake Sullivan, who signed a 2020 letter suggesting Russian involvement in Hunter Biden laptop allegations, which was proven to be untrue. (https://www.politico.com/news/2025/03/10/trump-admin-revokes-biden-officials-security-clearances-00146626); an April 9, 2025, order directing the DOJ to investigate former Cybersecurity and Infrastructure Security Agency head Chris Krebs for his 2020 election conduct; a February 25, 2025, memo revoking clearances for attorneys at firms like Covington & Burling involved in election-related cases (https://www.nbcnews.com/politics/donald-trump/tulsi-gabbard-pulls-security-clearances-top-biden-officials-went-trump-rcna144230); and an order mandating states use voting equipment compliant with federal law. These actions address systemic vulnerabilities, undermining Protect Democracy's narrative that such concerns are "disinformation."

Counsel's claim of "time and effort expended by Plaintiffs to enforce their rights" (Pg. 6) is a fabrication, as they provide no evidence that Freeman or Moss are aware of this proceeding, and their admission of no direct contact (Pg. 1) negates client involvement.


**II. Georgia Law Rejects Plaintiffs' Overbroad Interpretation of "About or Concerning"**

I am not an attorney, but rather a professional auditor and journalist, utilizing less sophisticated search engines.  With that said, I'm somewhat puzzled by the Plaintiff's criticism of my understanding of the law, when their surrebuttal opens with citations to case after case *from the state of Florida*, after all parties agreed that Georgia law controls.

Counsel's assertion that my statements are "about or concerning" the plaintiffs misapplies

Georgia law by equating general terms like "water main break", "Guiliani", or "lawsuits" with naming them individually. *Cox Enterprises, Inc. v. Nix*, 274 Ga. 801, 560 S.E.2d 650, requires statements to "specifically refer" to the plaintiff or be so closely associated that a reasonable person would unmistakably identify them. My statements on *The Joe Hoft Show* (e.g., November 21, 2024, January 15, 2025) discuss election litigation and Giuliani's legal battles without naming or describing the Plaintiffs. The Plaintiffs' claim that my reference to a "$148 million judgment" (Pg. 2) identifies them misrepresents my statement, which focused on the judge's actions against Giuliani, not the Plaintiffs. Their interpretation distorts *Cox Enterprises*, which rejected liability for ambiguous references. However, their publication about the Guiliani verdict would be a breach of the Settlement's provision to not publish any statement regarding the "Plaintiffs, primarily" because they do identify the plaintiffs in their report.

*Southern Co. v. Hamburg*, 220 Ga. App. 774 requires statements to be construed as ordinary readers would understand them, finding defamation only for explicit naming (Pg. 3). My generalized statements lack such targeting, and the Plaintiffs' claim that my audience "knows who [I'm] talking about" (Pg. 3) is speculative, as they admit lacking audience data (Pg. 1). For example, my website allows readers to leave comments. Zero proof has been provided in the comments that the undersigned is clearly speaking about the Plaintiffs.

*Atlanta Journal-Constitution v. Jewell* underscores the high bar for liability in public controversies, requiring actual malice, which the Plaintiffs fail to show. Counsel's omission of the Settlement Agreement's no-liability clause—which states the "Parties' entry into this Agreement does not constitute an admission of liability on the part of any party"—while falsely claiming I defamed them (Pg. 2), is dishonest and unprofessional, further evidencing their bad-faith campaign.

### III. Comparative Analysis of Plaintiffs' Cited Cases

Counsel cites four cases to support their choice of law and defamation arguments (Pg. 1-2), but these are largely unhelpful, as they are Florida-based and irrelevant to the "about or concerning" standard under Georgia law, which the Settlement Agreement explicitly requires. My rebuttal correctly applies *Cox Enterprises*, *Southern Co.*, and *Jewell*, and I explain why my legal arguments are sound.

- \**Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) (Pg. 2): This Florida-based case is unhelpful, as it addresses choice of law under Florida's "significant relationship test," holding that the plaintiff's domicile governed defamation claims. The Agreement mandates Georgia law (Section X, para. 3),

rendering *Michel*'s Florida framework irrelevant. It does not discuss "about or concerning," offering no guidance on identifiability. My reliance on *Cox Enterprises*, requiring specific reference, is correct.

- *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980) (Pg. 2): This Florida case is unhelpful, adopting the significant relationship test for torts in an airplane crash. It does not address defamation or "about or concerning," and its Florida context is irrelevant. My focus on *Cox Enterprises* and *Southern Co.*, defining Georgia's defamation standards, is appropriate.

- *Salas v. Bos. Sci. Corp.*, 2021 WL 2003345 (S.D. Fla. Mar. 29, 2021) (Pg. 2): This third Florida-based case is unhelpful, applying the significant relationship test to products liability. It offers no insight into defamation or "about or concerning," conflicting with the Agreement's Georgia law mandate. My use of *Southern Co.*, requiring explicit targeting, aligns with controlling law.

- *Ranbaxy Labs, Inc. v. First Databank, Inc.*, 2014 WL 982742 (M.D. Fla. Mar. 12, 2014) (Pg. 2): This Florida case has limited relevance, applying Florida law to defamation and emphasizing the plaintiff's domicile. It supports Georgia law's application but does not address "about or concerning." My reliance on *Cox Enterprises*, mandating unmistakable identifiability, is more pertinent. Counsel's claim that I misquoted *Cox Enterprises* (Pg. 3) is baseless, as my paraphrasing of its specific reference requirement (274 Ga. at 803) is accurate.

Counsel's reliance on three of the four Florida cases (*Michel*, *Bishop*, and *Salas*) is misguided, as their Florida choice-of-law focus is irrelevant given the Agreement's Georgia law requirement (Section X, para. 3). *Ranbaxy*, also Florida-based, offers no substantive guidance. My Georgia cases are on point:

- *Cox Enterprises* rejects liability for ambiguous references. My statements about "lawsuits" or "water main break" lack specificity.

- *Southern Co.* requires explicit naming. My generalized statements do not target the Plaintiffs.

- *Jewell* protects public controversy speech, requiring actual malice. My election-related speech is protected.

My rebuttal correctly applies Georgia law, unlike counsel's reliance on inapposite Florida cases.


## IV. My Statements Comply with the Settlement Agreement

Counsel's examples of my statements (Pg. 2-3) are misconstrued as they are compliant with the Settlement Agreement, which prohibits statements about the Plaintiffs

individually. My January 15, 2025, statement about a Wisconsin presentation (Pg. 2, https://rumble.com/v69j0um-the-joe-hoft-show-15-january-2025.html) explicitly avoids naming them, stating, "I promised I wouldn't say their names anymore," showing good faith. The November 21, 2024, reference to "monsters" and a "$148 million judgment" (Pg. 2) targets the judge's actions, not the Plaintiffs. Their claim that these statements uniquely identify them ignores over 200 election lawsuits nationwide and 60 in Georgia from 2020 to September 2024 (Brennan Center for Justice, https://www.brennancenter.org/our-work/research-reports/voting-laws-roundup-2023-review). *Cox Enterprises* requires unmistakable identifiability, which is absent.

Their focus on my water main break statements (Pg. 3, https://rumble.com/v64gu8m-the-joe-hoft-show-31december-2024.html) is a fabricated violation. My January 1, 2025, comment about "they came out on election night in 2020, and said, oh, there's a water main break" addresses a public event reported by WSB-TV https://www.wsbtv.com/news/local/atlanta/water-main-break-delays-vote-counting-fulton-county/) involving over 1,500 Fulton County workers (Atlanta Journal-Constitution, November 2020, https://www.ajc.com/politics/election/fulton-county-election-workers-face-long-hours-and-high-pressure/). Equating "water main break" to naming the Plaintiffs is as absurd as claiming "Georgia" or "ballots" violates the Agreement. Their reliance on a 2020 Gateway Pundit article (Pg. 4) is irrelevant, as it predates the Agreement, misconstrued my statements, and addressed actions I believed accurate, with no liability admitted (Section XII).

**V. Damages Claims Are Frivolous and Driven by Protect Democracy's Agenda**

Counsel's damages claims are speculative, duplicative, and part of Protect Democracy's campaign to bankrupt me, as they initiated arbitration without evidence of consulting Freeman or Moss, while admitting in the section titled "Communications or Contact with Plaintiffs": "Plaintiffs have suffered reputational harm but have not been contacted directly as a result of the new challenged statements, and we would not expect them to have been contacted" (Pg. 1). This admission confirms that Freeman and Moss appear to be wholly unaware of my statements, rendering counsel's projection of reputational harm and damages baseless. Their assertion that they "would not expect" contact negates any causal link to alleged harm, and their claim of past threats from a "defamation campaign" (Pg. 1) is invalid, given the Settlement Agreement's no-liability clause (Section XII), stating no party admitted liability. Official actions validate my concerns: DNI Tulsi Gabbard's April 10, 2025, statement about voting machine vulnerabilities and Trump's executive orders—revoking clearances for 49 officials (January 20, 2025), investigating

Chris Krebs (April 9, 2025), targeting law firms like Covington & Burling (February 25, 2025), and mandating compliant voting equipment—confirm systemic election issues (https://www.moneycontrol.com/news/world/tulsi-gabbard-backs-paper-ballots-claims-voting-machines-vulnerable-to-hackers-13165903.html; https://www.nbcnews.com/politics/donald-trump/tulsi-gabbard-pulls-security-clearances-top-biden-officials-went-trump-rcna144230). These negate counsel's "disinformation" label.

Their compensatory damages demand of $2,000 per statement (Pg. 4) lacks evidence of actual harm. They provide no evidence of harassment (Pg. 4), contradicting claims that the Plaintiffs "can't fully move on with their lives" (Pg. 4). Their assertion of the Plaintiffs' "peace of knowing" (Pg. 4) is baseless, as they have not contacted their clients, who are likely unaware of this arbitration. Their claim of "time and effort expended by Plaintiffs" (Pg. 6) is a lie, unsupported by client communication, especially given the admission of no direct contact (Pg. 1).

The Plaintiffs' $148 million Giuliani verdict ($73 million compensatory, $75 million punitive, Pg. 4, https://www.reuters.com/legal/giuliani-ordered-pay-148-mln-georgia-election-workers-defamation-case-2023-12-15/) fully compensated their reputational and emotional harms, rendering their current claim duplicative. Their speculative claim that they would have won more at trial (Pg. 4) is unsubstantiated, and their accusation of "racist attacks" (Pg. 4) lacks evidence. The 11,000 Rumble views for a January 1, 2025, episode covered many topics unrelated to this arbitration. Counsel's admission of no direct contact and no expectation of contact (Pg. 1) further weakens their speculative reputational harm claim, as any prior security measures (e.g., moving, changing contact information) predate my statements and relate to 2020 events, not my current speech.

Their punitive damages demand (Pg. 6) fails under O.C.G.A. § 51-12-5.1, requiring clear evidence of willful misconduct (*Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 365 S.E.2d 827 (1988). I complied with the Agreement, avoiding individual references, and removed videos in good faith despite disagreeing with counsel's absurd interpretation of topics, such as "water main break" referring to the plaintiffs. Their claim of "seventeen additional Statements" (Pg. 6) misattributes third-party content, like Patty McMurray's article (Pg. 7), which I did not author. Their $75 million punitive award against Giuliani served deterrence, making further penalties disproportionate. Protect Democracy's funding raises ethical concerns, as counsel's actions without client consent, despite admitting no direct harm (Pg. 1), suggest a political agenda to punish my speech.

## VI. Third-Party Content Is Irrelevant

Counsel's reliance on third-party content (Pg. 6-7) is a desperate attempt to bolster their weak case, as they cannot identify statements naming the Plaintiffs individually. They concede I am responsible only for my statements (Pg. 7), rendering references to "Real Robert," Joel Caldwell, and Patty McMurray irrelevant. The Agreement's third-party exemption shields me from liability for content I did not author. Their citation of a 2020 Gateway Pundit article (Pg. 4) and alleged cross-publishing (Pg. 7, https://www.thegatewaypundit.com/2025/04/liz-harrington-trump-protecting-america/) is immaterial, as these predate or postdate the challenged statements. The 137 articles (Pg. 7) were not adjudicated as defamatory, with no liability admitted.


## VII. Conclusion

I urge you to deny the Plaintiffs' claims in full. Their Surrebuttal, driven by Protect Democracy, fails to prove any breach, as my statements lack the specificity required by *Cox Enterprises* and *Southern Co.*. My rebuttal correctly applies Georgia law, rejecting counsel's unhelpful Florida cases. Their initiation of arbitration without evidence of consulting Freeman or Moss in the section titled "Communications or Contact with Plaintiffs" indicates that no direct harm occurred (Pg. 1) and reveals a politically motivated campaign to bankrupt and silence me, violating my First Amendment rights (*Jewell*). DNI Tulsi Gabbard's April 10, 2025, statements and Trump's 2025 executive orders validate my election integrity concerns, undermining Protect Democracy's narrative. Their damages claims are frivolous, duplicative given their $148 million Giuliani verdict, and undermined by the admission that the Plaintiffs are likely unaware of my statements. You should reject all demands and find no violation.


**Respectfully submitted,**


**Joe Hoft**

**From:** jwhoft@gmail.com <jwhoft@gmail.com>
**Sent:** Thursday, June 5, 2025 11:06 PM
**To:** 'Bohrer, Sanford L' <s.bohrer@miami.edu>
**Cc:** 'Matt Ampleman' <mampleman@dowdbennett.com>; 'Brittany Williams'
<brittany.williams@protectdemocracy.org>; 'Joe Hoft' <jwhoft@gmail.com>
**Subject:** RE: [EXTERNAL] RE: Arbitration Decision and Award


Mr. Bohrer,

This latest response from Mr. Ampleman is another example of why I requested procedural and evidentiary rules governing this arbitration process which I to date have not received.  Had I been told that for arbitrations there would be no rules applied whatsoever, I would not have agreed to the settlement agreement.  The current process with no known rules is challenging at best.

I lacked an understanding of arbitration rules regarding privacy, professional conduct, confidentiality, timeline expectations, procedural rules, communications, bias and an entire gambit of rules that would be expected and made clear before an arbitration process was initiated.  Having never been involved in an arbitration before, I was left in the dark throughout this process as a result.

To date the parties have used you (the arbitrator) for the most part to communicate with one another rather than directly.  Now to end this arbitration, I am expected per the decision made and Mr. Ampleman's assumptions and directives to come to an agreement with the plaintiffs' attorneys regarding the fees that they intend to charge me for their work during the arbitration.

I question the wisdom in this especially now after receiving your decision.  I (the "losing" party) am expected to be subjected to going through an itemized list discussion with the plaintiffs of what I am expected to pay to the plaintiffs (my adversary) who started this arbitration process against me in the first place.  I just don't think this is a good idea.

Overall, I think the fees received from Mr. Ampleman, et al, are excessive and likely at least 50% greater than expected.  For example, it appears that I am expected to pay for fees related to legal research performed by the plaintiffs' attorneys where they ended up citing irrelevant cases not from Georgia, as the settlement agreement states, but from Florida.  How can that be?

The attorney fees presented in the attached total nearly $50,000 ($47,559) and are higher than the punitive and compensatory damages awarded in your decision of $35,000.  With the fees being over 40 percent more than the damages awarded in your decision, they become punitory

as well.  Only in a corrupt world would this be the case. It was my understanding that this arbitration process was put in place to save time and costs, but this isn't coming out that way.

Per GROK -  The average hourly rate for attorney fees in the U.S. in 2025 varies by source but generally falls between $300 and $400.

If the hours reported by the attorneys in the Excel file reported were multiplied by the average US hourly rate the total would be approximately $22,050 (63 hours times $350 per hour).  This is less than half of what was reported by the plaintiffs' attorneys involved and less than the punitive and compensatory damages you awarded the plaintiffs.  This appears more in line with average fees across the country and expectations based on the award in this case.

I'm asking that you kindly see the sense in this calculation and award legal fees in a more appropriate and reasonable amount of $22,050.

Appreciate your consideration.

Joe Hoft

**From:** Bohrer, Sanford L <s.bohrer@miami.edu>
**Sent:** Thursday, June 5, 2025 9:38 AM
**To:** jwhoft@gmail.com
**Cc:** Matt Ampleman <mampleman@dowdbennett.com>; Brittany Williams <brittany.williams@protectdemocracy.org>; Joe Hoft <jwhoft@gmail.com>
**Subject:** Re: [EXTERNAL] RE: Arbitration Decision and Award

I have no additional charges.

On Jun 5, 2025, at 9:24 AM, jwhoft@gmail.com wrote:

 **CAUTION:** This email originated from outside the organization. **DO NOT CLICK ON LINKS or OPEN ATTACHMENTS** unless you know and trust the sender.


Mr. Ampleman,

I will have to get back to you later today.  I have not had time to review in detail your fee report yet.

Mr. Bohrer,


When can I expect to receive your fees?

Joe Hoft

**From:** Matt Ampleman <mampleman@dowdbennett.com>
**Sent:** Tuesday, June 3, 2025 2:25 PM
**To:** jwhoft@gmail.com
**Cc:** Bohrer, Sanford L <s.bohrer@miami.edu>; Brittany Williams
<brittany.williams@protectdemocracy.org>
**Subject:** Re: Arbitration Decision and Award

Mr. Hoft,

Please see the attached spreadsheet listing the attorneys' fees relevant to enforcement of the settlement agreement. Mr. Borher asked the parties to come to an agreement on the amount of attorneys' fees and expenses by this Friday, June 6. To that end, we think a phone call would be beneficial to the extent you have any questions about or would otherwise like to discuss the attached. Please let us know when may be good for you to discuss this Thursday or Friday.

Thank you,

Matt

Matt Ampleman, Dowd Bennett LLP

314.889.7373 (o), 314.604.8398 (m)

mampleman@dowdbennett.com

On Fri, May 23, 2025 at 11:05 AM <jwhoft@gmail.com> wrote:

Mr. Bohrer,

I received your email.

Sincerely,

Joe

|  | Alleged Exception | Video or Article | Removed from Platform | | | | Accused Infringement |
|---|---|---|---|---|---|---|---|
|  |  |  | JoeHoft.com | Conservative Daily | Untamed Truth | Lindell TV |  |
| 1 | https://theuntamedtruth.com/the-joehoft-show-jan-6er-captain-chris-kuehne-released-from-prison-friday-18-november-2024/ | Video | A | B | C | D | Rudy Giuliani lawsuit |
| 2 | https://theuntamedtruth.com/the-joehoft-show-greg-stenstrom-and-leah-hoopes-20-november-2024/ | Video | A | B | C | D | Rudy Giuliani lawsuit |
| 3 | https://theuntamedtruth.com/the-joehoft-show-mary-flynn-oneill-and-lara-logan-pt-1-21-november-2024/1 | Video | A | B | C | D | Rudy Giuliani lawsuit |
| 4 | https://theuntamedtruth.com/the-joehoft-show-eric-metaxas-on-courage-and-christianity-25-november-2024/ | Video | A | B | C | D | Rudy Giuliani lawsuit |
| 5 | https://joehoft.com/the-politicallymotivated-persecution-of-americas-mayor-rudy-giuliani/ | Article | A | N/A | N/A | N/A | Rudy Giuliani lawsuit |
| 6 | https://theuntamedtruth.com/the-joehoft-show-sheila-matthews-on-big-pharmas-psych-out-5-december-2024/ | Video | A | B | C | D | Being sued for telling the truth |
| 7 | https://theuntamedtruth.com/the-joehoft-show-with-col-rob-maness-ret-13-december-2024/ | Video | A | B | C | D | Being sued for telling the truth |
| 8 | https://rumble.com/v64ymyv-on-tap-withppn.Html | Video | A/AA | B | AA | AA | Being sued for telling the truth |
| 9 | https://theuntamedtruth.com/the-joe-hoftshow-garland-and-tamara-favorito-on-georgia-elections-and-ending-dominion-15-january-2025/ | Video | A | B | C | D | Being sued for telling the truth |
| 10 | https://joehoft.com/media/emeraldrobinson-with-jim-and-joe-hoft-after-2024-election/ | Video | A | B | N/A 1 | D | Water main break |
| 11 | https://theuntamedtruth.com/the-joehoft-show-attorney-tom-renz-on-america-12-november-2024/ | Video | A | B | C | D | Water main break |
| 12 | https://theuntamedtruth.com/the-joehoft-show-liz-harrington-on-president-trumps-2024-win-13-november-2024/ | Video | A | B | C | D | Water main break |
| 13 | https://theuntamedtruth.com/the-joehoft-show-garland-favorito-and-the-georgia-election-14-november-2024/ | Video | A | B | C | D | Water main break |
| 14 | https://theuntamedtruth.com/the-joehoft-show-greg-stenstrom-and-leah-hoopes-20-november-2024/ | Video | A/E | B | C | D | Water main break |
| 15 | https://theuntamedtruth.com/the-joehoft-show-with-lara-logan-and-mary-flynn-oniell-pt2-29-november-2024/ | Video | A | B | C | D | Water main break |
| 16 | https://theuntamedtruth.com/the-joehoft-show-guya-mariani-gives-italian-position-on-trumps-win-12-december-2024/ | Video | A | B | C | D | Water main break |
| 17 | https://theuntamedtruth.com/the-joe-hoftshow-last-show-of-the-year-with-sal-greco-1-january-2025/ | Video | A | B | C | D | Water main break |

**INDEX**

| | |
|---|---|
| A | Removed from JoeHoft.com on or by February 20, 2025 |
| B | Conservative Daily Changed its name to Untamed Nation - Unable to identify any videos online under Conservative Daily entity name |
| C | Removed from Untamed Nation on or by April 7, 2025 |
| D | Joe Hoft no longer contributes to Lindell TV since the split with Conservative Daily/Untamed Nation on or around February 1, 2025 |
| E | This video is a duplicate (See 2 and 14) |
| AA | Joe Hoft has never contributed to this Podcast - He was a guest in this segment - This was never posted at Untamed Nation or Lindell TV |
| N/A | Not applicable because this was an article not published at this site |
| N/A 1 | Not applicable because not published at Untamed Nation |

**NOTES**

1. At no point did Joe Hoft believe that any of these statements were outside the Settlement Agreement - as explained numerous times - his efforts to have these videos removed were to show good faith
2. Of the 17 alleged exceptions, 1 is a duplicate - Of the 16 individual alleged exceptions, there are 15 videos and 1 article
3. Lindell TV and Conservative Daily/Untamed Nation split on around February 01, 2025. After that date Joe Hoft no longer contributes to Lindell TV
4. Numerous discussions took place with the management of Untamed Nation in effort to remove videos from Internet - all were confirmed removed on or by April 7, 2025
5. Joe Hoft separated from Untamed Nation as of April 25, 2025 - he no longer contributes to this entity
6. Guests are assumed to be different than contributors

<u>**CONFIDENTIAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT**</u>

This Confidential Mutual Release and Settlement Agreement ("Agreement") is made and entered into by and among Ruby Freeman and Wandrea Moss (collectively "Plaintiffs"), the Freeman and Moss Plaintiff Recovery Trust (the "Trust"), and James Hoft, Joseph Hoft, and TGP Communications, LLC d/b/a *The Gateway Pundit* (collectively "Defendants"). The parties referenced above shall be collectively referenced herein as the "Parties." This Agreement shall be deemed effective on the date it is fully executed by all Parties.

WHEREAS, Plaintiffs have made certain claims against Defendants (the "Claims") made subject of the lawsuit styled *Freeman, et al. v. Hoft, et al.*, Case No. 2122-CC09815-01, in the Circuit Court of St. Louis City, Missouri, Twenty-Second Judicial Circuit ("Lawsuit"), as well as in a series of Demands to Cease and Desist, dated November 22, 2021, December 24, 2021, June 16, 2022, August 31, 2023, October 3, 2023, November 29, 2023, December 21, 2023, January 19, 2024, February 7, 2024, March 29, 2024, and September 9, 2024 (collectively "Demands"), and Defendants similarly sought to bring certain counterclaims against Plaintiffs in the Lawsuit (the "Counterclaims"); and

WHEREAS, Plaintiffs transferred the Claims in the Lawsuit against Defendants, which remained unresolved prior to this Agreement, to the Trust. Plaintiffs did so for the preservation and administration of the Claims, to reduce Plaintiffs' tax burden, and for creditor protection. The Trust's trustee is the PRT Trust Committee (the "Trustee"), of which Eastern Point Trust Company is a Member; and

WHEREAS, it is the desire of the Parties to this Agreement to enter into a full and complete settlement and discharge of all claims and counterclaims the Parties did or could have made in the Lawsuit, Demands, and Counterclaims, arising from and/or related to the counting of the 2020 presidential election at the State Farm Arena, and statements and publications related thereto and/or about each other, including but not limited to any and all claims for known or unknown past, present, or future loss, cost, injury, expense, or damage of any kind,

NOW THEREFORE, the Parties agree as follows:

I.    <u>**RELEASE OF LIABILITY**</u>

For valuable consideration, the sufficiency of which is hereby acknowledged, and subject to the making of the Settlement Payment under Option A or Option B set forth below, and subject to the terms stated in Section X.3 below, the Trust, Trustee, and Plaintiffs, for themselves and their agents, insurers, representatives, successors, heirs, attorneys and assigns, release, acquit, and forever discharge Defendants and their agents, insurers, insurance companies, re-insurers, third-party administrators, employees, servants, attorneys, trustees, representatives, successors, heirs, and assigns, of and from any and all past, present, and future losses, claims, liabilities, demands, debts, dues, sums of money, costs, expenses, attorneys' fees, promises, damages, actions, and causes of action of any type or nature whatsoever, known and unknown, cognizable at law or in equity, by contract, statute or otherwise, including without limitation claims for personal injury, defamation, libel, slander, negligence, or property damage, which have accrued or may hereafter

accrue or otherwise be acquired, that are on account of, related to, or in any way arising out of the Demands, the Lawsuit, the Counterclaims, and/or any statements and publications concerning Plaintiffs and/or the counting of the 2020 presidential election at the State Farm Arena, whether raised in the Lawsuit or Demands or which could have been asserted in the Lawsuit or Demands made prior to the date of the complete execution of this Agreement, including without limitation all known or unknown claims which have resulted or may result from the alleged acts or omissions of the Defendants, consistent with all other provisions of this Agreement. The release shall not include any claims related to the enforcement of this Agreement or claims related to enforcement of the Protective Order entered in this matter.

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Defendants, for themselves and their agents, insurers, insurance companies, re-insurers, third-party administrators, representatives, successors, heirs, attorneys and assigns, release, acquit, and forever discharge Plaintiffs and their agents, insurers, employees, servants, attorneys, trustees, representatives, successors, heirs, and assigns, of and from any and all past, present, and future losses, claims, liabilities, demands, debts, dues, sums of money, costs, expenses, attorneys' fees, promises, damages, actions, and causes of action of any type or nature whatsoever, known and unknown, cognizable at law or in equity, by contract, statute or otherwise, including without limitation claims for personal injury or property damage, which have accrued or may hereafter accrue or otherwise be acquired, that are on account of, related to, or in any way arising out of the Demands, the Lawsuit, the Counterclaims, and/or any statements and publications concerning Plaintiffs and the counting of the 2020 presidential election at the State Farm Arena, whether raised in the Counterclaims or which could have been asserted in the Lawsuit or Counterclaims, including without limitation all known or unknown claims which have resulted or may result from the alleged acts or omissions of the Plaintiffs, consistent with all other provisions of this Agreement. The release shall not include any claims related to the enforcement of this Agreement or claims related to enforcement of the Protective Order entered in this matter.

The Parties understand and agree that the Agreement shall be a full, binding, and complete settlement between and among the Parties and any and all individuals and entities represented by or claiming through the Parties. Each Party to this Agreement expressly acknowledges that the Releases set forth above are intended to be interpreted as broadly as possible and encompass any and all claims in any way related to the Demands, the Lawsuit, the Counterclaims, or the subject matter thereof, with the exception of the provisions included in Section X.3 below.

## II.     **GOOD FAITH RESOLUTION OF DISPUTED CLAIMS**

The Parties understand, agree, and acknowledge that the Agreement, including the settlements, releases, and waivers of claims contained herein, was made in good faith and out of the Parties' desire to resolve issues related to statements and publications concerning Plaintiffs and the counting of the 2020 presidential election at the State Farm Arena and the claims made in an amicable fashion and to fully and finally settle amongst themselves any and all claims and disputes arising from and/or relating to statements and publications concerning Plaintiffs and the counting of the 2020 presidential election at the State Farm Arena and other disputes relating to the Lawsuit.

The Parties further understand, agree, and acknowledge that the Parties dispute all claims that were or could have been asserted against them. The Parties enter into this Agreement solely to avoid litigation and the associated expense of litigation and intend the Agreement to fully and finally settle all disputed and doubtful claims. The Parties' entry into this Agreement does not constitute an admission of liability on the part of any party hereto, which liability is expressly denied.

## III.    CONSIDERATION

For and in full consideration of the releases, waivers, promises, and all other terms and conditions contained in this Agreement, the Parties agree to the following:

1.

2. In the event the Settlement Payment is not made

3. Defendants shall, within fourteen days of the complete execution of this Agreement, remove every statement about or concerning Plaintiffs identified in the Second Amended Petition of the Lawsuit and the Demands to the extent such is within their power and control. Defendants shall further remove any other statement about or concerning Plaintiffs, individually, identified by Plaintiffs, to the extent such is within their power and control, within fourteen days of such identification and notice to Defendants by Plaintiffs, which identification shall be final within fourteen days of the complete execution of this Agreement, subject to reasonable objection to such identification within such timeframe by Defendants, whereupon the Parties shall reasonably endeavor to resolve the propriety of whether such statement should be removed. Defendants shall not be responsible for the removal of copies of any

publication by Defendants made and published by third parties, so long as such is outside their power and control.

4. Except as expressly set forth below, Defendants agree that they shall not make any further publication about or concerning Plaintiffs, individually, whether on *The Gateway Pundit* website or elsewhere, including, but not limited to, pictures of Plaintiffs. Defendants shall not be responsible for any publication made and published by third parties, so long as such is outside their power and control and so long as Defendants shall not contribute to such publications. In the event of a violation of this provision, the Arbitrator (as identified below) shall be exclusively empowered to determine the compensatory damages to be paid for such violation and to impose punitive damages for multiple violations in an amount reasonably calculated to deter future violations.

5. Within fourteen days of the complete execution of this Agreement, TGP Communications shall cause to be published the following statement on *The Gateway Pundit* website and its social media accounts:

*Georgia officials concluded that there was no widespread voter fraud by election workers who counted ballots at the State Farm Arena in November 2020. The results of this investigation indicate that Ruby Freeman and Wandrea 'Shaye' Moss did not engage in ballot fraud or criminal misconduct while working at State Farm Arena on election night. A legal matter with this news organization and the two election workers has been resolved to the mutual satisfaction of the parties through a fair and reasonable settlement.*

The Parties agree that each of the foregoing provisions in Section III is material to this Agreement.

## IV. <u>CONFIDENTIALITY</u>

The contents, terms, amount, and conditions of this Agreement are strictly confidential between the Parties, their attorneys, and their agents/representatives, except as may be necessary to effectuate its terms or comply with a valid court order or subpoena. The Parties agree that confidentiality is material to this Agreement.

The Parties, their attorneys, and their agents/representatives shall not directly or indirectly make, publish, or cause to be made or published any statement to any third party other than the Parties' attorneys, other professional advisors, and immediate family members, regarding the subject matter of this Agreement, except as described in the preceding paragraph. If inquiries are made by any third party regarding this Agreement, the Lawsuit, the Demands, or the Counterclaims, the Parties and their representatives shall state only that the dispute between the Parties has been resolved to the mutual satisfaction of the parties through a fair and reasonable settlement.

## V.    <u>MUTUAL DOXING COVENANTS</u>

The Parties agree that neither Party shall publish any information disclosing any other Party's and/or their immediate families' addresses, contact information, and/or social media handles, in perpetuity. The Parties agree that neither Party shall publish any information disclosing any other Party's employers', employees', or attorneys' personal, non-professional addresses or personal, non-professional contact information. Notwithstanding the foregoing, the Parties are free to publish contact information for the Parties' attorneys' public and private employers and/or institutions. In the event of a violation of this provision, the Arbitrator (as identified below) shall be exclusively empowered to determine the compensatory damages to be paid for such Lawsuit. Any violation of the terms of the Protective Order with respect to the Parties' confidential information shall constitute a material breach of this Agreement. The Arbitrator shall be exclusively empowered to determine the compensatory damages to be paid for such violations and to impose punitive damages for multiple violations in an amount reasonably calculated to deter future violations.

## VI.    <u>SEVERABILITY</u>

In the event any condition, covenant, or provision contained in this Agreement is held to be invalid, unenforceable, or void by any court of competent jurisdiction, the same shall be deemed severable from the remainder of the Agreement and shall in no way affect any other conditions, covenants, or provisions herein contained, and the remainder of the Agreement shall continue to be valid and enforceable. If such condition, covenant, or other provision shall be deemed invalid or unenforceable due to scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.

## VII.    <u>INTEGRATION AND MODIFICATIONS</u>

This Agreement contains the entire understanding of the parties hereto relating to the subject matter contained herein and supersedes all prior and collateral agreements, understandings, statements and negotiations of the parties. Each party acknowledges that no representations, inducements, promises, or agreements, oral or written, with reference to the subject matter hereto have been made other than as expressly set forth herein and as agreed to by electronic mail on September 20, 2024, said agreement being superseded by this Agreement. This Agreement cannot be changed, rescinded or terminated orally. This Agreement shall not be altered, amended, modified, or otherwise changed except by a writing duly signed by all the Parties hereto.

## VIII.    <u>COPIES AND COUNTERPARTS VALID AS ORIGINAL</u>

This Agreement may be executed in multiple counterparts with the same effect as if all original signatures were placed on one document and which, when taken together, shall constitute one original agreement. Signatures transmitted by facsimile or email shall have the same force and effect as an original signature. A photocopy or facsimile copy of this Agreement may be substituted in place of the original version of the same.

## IX. PARAGRAPH HEADINGS

Paragraph headings are for reference only and shall not affect the interpretation of any paragraph in this Agreement.

## X. DISPUTE RESOLUTION

1. Any claim for breach of this Agreement must be material and not *de minimis*. Prior to instituting a proceeding arising from a claimed breach of this Agreement, the allegedly breaching Party must be given notice by email to attorney John Burns, at email addresses ███████████████████████████████████████████████████████████████ f the alleged breach and seven days to cure such alleged breach, with the cure being a complete defense to such claim of breach. The Parties further agree that they will use reasonable efforts to identify any breach they may have made, provide notice to the affected Party, and cure the same within seven days of such identification, with the cure being a complete defense to such breach.

2. Any controversy or claim arising from or relating to this Agreement shall be resolved by confidential arbitration. Such arbitrator is hereby identified as Sanford Bohrer ("Arbitrator"). If the Arbitrator is unable or unwilling to serve, then the Arbitrator shall select a successor arbitrator. If the Arbitrator is unable or unwilling to select a successor arbitrator, then the Parties shall select a successor arbitrator of similar qualifications and experience as the Arbitrator. The arbitration shall not be conducted under the auspices or rules of the American Arbitration Association or JAMS, but the Arbitrator (including a successor arbitrator) may utilize the procedural rules of those entities in conducting the arbitration. The costs of the arbitration (not including an individual party's attorneys' fees and expenses) shall be borne equally by the Parties, except that party prevailing at arbitration shall be entitled to its reasonable attorneys' fees, expenses, and reimbursement of its share of the costs of arbitration.

3. Liability for all statements by Joseph Hoft that are not made subject of the Second Amended Petition, but which were made on or before the date of the execution of this Agreement ("Joseph Hoft Statements") are released at this time, except that Plaintiffs may bring a claim based on the Joseph Hoft Statements if all of the following conditions are met:

   - Joseph Hoft materially breaches this Agreement;

   - Joseph Hoft fails to cure any breach within seven (7) days of being provided notice;

   - Any claim arising from the Joseph Hoft Statements must be brought as an arbitration before the Arbitrator consistent with the foregoing provision; and

   - Notwithstanding any other provision of this Agreement, any claim arising from the Joseph Hoft Statements will be subject to Georgia Law, including

its one-year statute of limitations, which the parties agree has been tolled as of the date of this Agreement, but which begins to run on the date of the complete execution of this Agreement.

Pursuant to the one-year Georgia statute of limitations period, the Defendants will preserve and ensure that they and their agents and/or representatives will preserve all documents and evidence in their possession, custody and/or control that have already been produced in the underlying Lawsuit for one year after the complete execution of this Agreement.

## XI.   DISMISSAL OF LAWSUIT AND BANKRUPTCY PROCEEDING

Within 14 days of the complete execution of this Agreement, the Parties shall jointly request that the Lawsuit be stayed until 180 days from the complete execution of this Agreement in light of a settlement reached by the Parties. For the remaining pendency of the Lawsuit, Defendants consent to the joinder of the Trust as a party in interest to claims against Defendants made subject of the Lawsuit. ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████

In the event the Circuit Court for the City of Saint Louis, Missouri, is unwilling or unable to stay/ postpone the present trial date of March 10, 2025, Plaintiffs agree to dismiss their claims without prejudice after Defendants have made their payments due within 30 days and within 90 days of execution of this Agreement, as described in Section III.1 of this Agreement, with the understanding that Plaintiffs will be able to refile their suit in the event Defendants fail to pay the entire Settlement Amount. Defendants agree to waive any statute of limitations defense for the purposes of this renewed action.

In the event that James Hoft or TGP Communications, LLC becomes a debtor under the Bankruptcy Code under any circumstances, such debtor (whether James Hoft or TGP Communications, LLC) agrees that it shall promptly file a motion seeking court authorization to assume this Agreement, in any event no later than 30 days after the commencement of such a bankruptcy case, or, in the case of TGP Communications, LLC, should it successfully appeal the *Memorandum Opinion and Order Granting Motion to Dismiss Chapter 11 Case Under Sections 1112(b) and 305(a) of the Bankruptcy Code and Cancelling Hearing*, Dkt. 95, entered on July 25, 2024 in the United States Bankruptcy Court for the Southern District of Florida (Case No. 24-13938-MAM), then no later than 30 days after the date of any opinion, order, or memorandum determining the success of such an appeal.  In the event the debtor has not filed such a motion within the time frame set forth above, the Plaintiffs may file such a motion and the Defendants waive any all rights to oppose such a motion.

**XII.    <u>NO INDUCEMENT / ADVICE OF ATTORNEYS</u>**

The Parties expressly warrant and represent that, in executing this Agreement, they are not relying upon any representation, promise, inducement, or statement made by or on behalf of any other party to this Agreement, nor are the Parties, and each of them relying on any omission or the absence of any statement, representation, promise, or inducement not made herein. The Parties further represent that they have been represented by legal counsel during the course of the negotiations leading to the signing of this Agreement, and that they have been advised by legal counsel with respect to the meaning of this Agreement and its legal effect. The Parties expressly declare that they enter into this Agreement voluntarily, in accordance with their own free will, and after having consulted with their respective attorneys.

**XIII.    <u>WARRANTY OF CAPACITY TO EXECUTE AGREEMENT</u>**

The Parties represent and warrant that they have the sole right and exclusive authority to execute this Agreement and receive the sums specified in herein. The Parties represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, except as may otherwise be set forth herein; nor have the Defendants assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referenced in this Agreement.

Additionally, each of the Parties warrants that the individual executing the Agreement on its behalf has the full capacity and authority to enter into the Agreement and to bind the individual and/or entity on whose behalf he/she affixes his/her signature. This Agreement shall bind and inure to the benefit of the Parties and their respective heirs, legal representatives, executors, successors, and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement.

**In affixing their respective signatures below, the Parties acknowledge that they have read and understand this Confidential Mutual Release and Settlement Agreement, have authority to agree to and execute this Confidential Mutual Release and Settlement Agreement, and that each of them has freely and voluntarily executed it by signing below.**

*Ruby Freeman*
Ruby Freeman (Sep 30, 2024 09:23 EDT)

Ruby Freeman
*Plaintiff*
Date: 09/30/2024

*Wandrea' Moss*
Wandrea' Moss (Sep 30, 2024 09:18 EDT)

Wandrea' ArShaye "Shaye" Moss
*Plaintiff*
Date: 09/30/2024

*James Hoft*
James Hoft (Sep 29, 2024 18:57 CDT)

TGP Communications, LLC d/b/a *The Gateway Pundit*, by James Hoft, its Manager
*Defendant*
Date: 09/29/2024

James Hoft, Individually
*Defendant*
Date:

*Joseph Hoft*
Joseph Hoft (Sep 29, 2024 20:29 EDT)

Joseph Hoft, Individually
*Defendant*
Date: 09/29/2024

*Lawrence Eisenberg, Authorized Signer*
Lawrence Eisenberg, Authorized Signer (Sep 30, 2024 11:32 CDT)

Freeman and Moss Plaintiff Recovery Trust, by PRT Trust Committee
Date: 09/30/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
CASE NO.: 25-CV-14328-SMM

FILED BY _MMB_ D.C.

NOV 12 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

JOSEPH HOFT,
Petitioner,

v.

RUBY FREEMAN and WANDA "SHAYE" MOSS,
Respondents.

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Petitioner Joseph Hoft, appearing pro se, notifies the Court of **supplemental authority** directly

relevant to his **Motion to Vacate Arbitration Award (D.E. 1), Motion for Entry of Default**

**(D.E. 17),** and **Motion for Preliminary Injunction (D.E. 12):**

**President Donald J. Trump's Proclamation of November 7, 2025,** granting a **full, complete,**

**and unconditional pardon** to all individuals for conduct relating to "efforts to expose voting

fraud and vulnerabilities in the 2020 Presidential Election."

This pardon **vindicates** Petitioner's statements as **protected advocacy, undermines** the

arbitration award, and **supports vacatur** under **O.C.G.A. § 9-9-13(b)(5)** (manifest disregard of

law) and **9 U.S.C. § 10(a)(3)** (arbitrator misconduct).

**I. THE PARDON IS DISPOSITIVE SUPPLEMENTAL AUTHORITY**

1. **Pardon Text (Exhibit OO)**

1

A-86

"I, DONALD J. TRUMP... do hereby grant a full, complete, and unconditional pardon to all United States citizens for conduct relating to... efforts to expose voting fraud and vulnerabilities in the 2020 Presidential Election."

2. **Direct Application to Petitioner**

Petitioner's statements (alleged breaches) were related to efforts to expose fraud and vulnerabilities in the 2020 Election — identical to the conduct pardoned.

3. **Manifest Disregard of Law**

Arbitrator Bohrer **ignored** Georgia defamation law requiring **clear identification** of plaintiffs (*Cox Enterprises v. Nix*, 274 Ga. 801 (2002)) and **First Amendment protections** for election fraud advocacy. The pardon **confirms** this was error.

4. **Irreparable Harm for Injunction**

Enforcing a $63,050 award against **pardoned conduct** violates public policy and causes **financial/reputational damage**.

## II. CONCLUSION

The pardon **obliterates** the basis for the arbitration award. The Court should **vacate** the award, **enter default**, and **grant the injunction**.

Dated: November 12, 2025
Respectfully submitted,
/s/ Joe Hoft
Joe Hoft, pro se
8750 South Ocean Drive, Unit 534
Jensen Beach, FL 34957
772-618-3512
jwhoft@gmail.com

**Certificate of Service**
I certify that on November 12, 2025, a true and correct copy was served on:

2

- **Brittany Williams**, Protect Democracy, brittany.williams@protectdemocracy.org
- **Matt Ampleman**, Dowd Bennett LLP, mampleman@dowdbennett.com
  via email and U.S. Mail, certified with return receipt requested.
  /s/ Joe Hoft

**EXHIBIT OO**: President Trump's Pardon Proclamation (November 7, 2025)
*(Attached with Cover Sheet)*

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
CASE NO.: 25-CV-14328-SMM

JOSEPH HOFT,
Petitioner,

v.

RUBY FREEMAN and WANDA "SHAYE" MOSS,
Respondents.

**EXHIBIT OO**
**TO NOTICE OF SUPPLEMENTAL AUTHORITY**

**DESCRIPTION:**
**Presidential Proclamation**
**Issued: November 7, 2025**
**By: Donald J. Trump, President of the United States**

**TITLE:**
**Granting Pardons for Certain Offenses Related to the 2020 Presidential Election**

**PURPOSE:**
This exhibit is the **full text** of the pardon proclamation, which **vindicates** Petitioner's statements as **protected efforts to expose 2020 election fraud**, directly supporting:

- **Vacatur** under O.C.G.A. § 9-9-13(b)(5) and 9 U.S.C. § 10(a)(3)
- **Default** (D.E. 17)
- **Injunction** (D.E. 12)

**SOURCE:** Official White House Release (November 7, 2025)

---

**ATTACHED:** Full Proclamation Text

GRANTING PARDONS FOR CERTAIN OFFENSES RELATED TO THE 2020
PRESIDENTIAL ELECTION

- - - - - -

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

This proclamation ends a grave national injustice perpetrated upon the American people following the 2020 Presidential Election and continues the process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I, DONALD J. TRUMP, do hereby grant a full, complete, and unconditional pardon to all United States citizens for conduct relating to the advice, creation, organization, execution, submission, support, voting, activities, participation in, or advocacy for or of any slate or proposed slate of Presidential electors, whether or not recognized by any State or State official, in connection with the 2020 Presidential Election, as well for any conduct relating to their efforts to expose voting fraud and vulnerabilities in the 2020 Presidential Election.

This includes, but is not limited to:

- Mark Amick
- Kathy Berden
- Christina Bobb
- Tyler Bowyer
- Joseph Brannan
- Carol Brunner
- Mary Buestrin
- Darryl Carlson
- James "Ken" Carroll
- Brad Carver

- Robert Cheeley
- Kenneth Chesebro
- Hank Choate
- Jeffrey Clark
- Vikki Consiglio
- Nancy Cottle
- James DeGraffenreid
- John Downey
- John Eastman
- Jenna Ellis
- Boris Epshteyn
- Amy Facchinello
- Bill Feehan
- Carolyn Fisher
- Harrison Floyd
- Clifford Frost
- Kay Godwin
- Edward Scott Grabins
- Stanley Grot
- Rudolph Giuliani
- John Haggard
- Scott Hall
- Misty Hampton
- David G. Hanna
- Mark Hennessy
- Mari-Ann Henry
- Durward James Hindle III
- Andrew Hitt
- Jake Hoffman

A-91

- Burt Jones
- Anthony T. Kern
- Kathy Kiernen
- Timothy King
- Trevian Kutti
- James Lamon
- Cathleen Latham
- Jesse Law
- Stephen Lee
- Michele Lundgren
- Meshawn Maddock
- Michael McDonald
- Mark Meadows
- Shawn Meehan
- Robert Montgomery
- Daryl Moody
- Samuel I. Moorhead
- Loraine Pellegrino
- Sidney Powell
- James Renner
- Eileen Rice
- Mayra Rodriguez
- Mike Roman
- Rose Rook
- Kelly Ruh
- Greg Safsten
- David Shafer
- Marian Sheridan
- Ray Stallings Smith III

- Robert F. Spindell Jr.

- Shawn Still

- Ken Thompson

- Pam Travis

- James Troupis

- Kent Vanderwood

- Kelli Ward

- Michael Ward

- C.B. Yadav

This pardon does not apply to the President of the United States, Donald J. Trump.

The Attorney General, acting through the Pardon Attorney, shall administer and effectuate the issuance of certificates of pardon to eligible applicants.

IN WITNESS WHEREOF, I have hereunto set my hand this seventh day of November, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and fiftieth.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
CASE NO.: 25-CV-14328-SMM

JOSEPH HOFT,
Petitioner,

v.

RUBY FREEMAN and WANDA "SHAYE" MOSS,
Respondents.

**EXHIBIT OO**
**TO NOTICE OF SUPPLEMENTAL AUTHORITY**

**DESCRIPTION**:
**Presidential Proclamation**
**Issued: November 7, 2025**
**By: Donald J. Trump, President of the United States**

**TITLE**:
**Granting Pardons for Certain Offenses Related to the 2020 Presidential Election**

**PURPOSE**:
This exhibit is the **full text** of the pardon proclamation, which **vindicates** Petitioner's statements as **protected efforts to expose 2020 election fraud**, directly supporting:

- **Vacatur** under O.C.G.A. § 9-9-13(b)(5) and 9 U.S.C. § 10(a)(3)
- **Default** (D.E. 17)
- **Injunction** (D.E. 12)

**SOURCE**: Official White House Release (November 7, 2025)

---

**ATTACHED**: Full Proclamation Text

A-94

GRANTING PARDONS FOR CERTAIN OFFENSES RELATED TO THE 2020
PRESIDENTIAL ELECTION

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

This proclamation ends a grave national injustice perpetrated upon the American people following the 2020 Presidential Election and continues the process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I, DONALD J. TRUMP, do hereby grant a full, complete, and unconditional pardon to all United States citizens for conduct relating to the advice, creation, organization, execution, submission, support, voting, activities, participation in, or advocacy for or of any slate or proposed slate of Presidential electors, whether or not recognized by any State or State official, in connection with the 2020 Presidential Election, as well for any conduct relating to their efforts to expose voting fraud and vulnerabilities in the 2020 Presidential Election.

This includes, but is not limited to:

- Mark Amick
- Kathy Berden
- Christina Bobb
- Tyler Bowyer
- Joseph Brannan
- Carol Brunner
- Mary Buestrin
- Darryl Carlson
- James "Ken" Carroll
- Brad Carver

2

- Robert Cheeley
- Kenneth Chesebro
- Hank Choate
- Jeffrey Clark
- Vikki Consiglio
- Nancy Cottle
- James DeGraffenreid
- John Downey
- John Eastman
- Jenna Ellis
- Boris Epshteyn
- Amy Facchinello
- Bill Feehan
- Carolyn Fisher
- Harrison Floyd
- Clifford Frost
- Kay Godwin
- Edward Scott Grabins
- Stanley Grot
- Rudolph Giuliani
- John Haggard
- Scott Hall
- Misty Hampton
- David G. Hanna
- Mark Hennessy
- Mari-Ann Henry
- Durward James Hindle III
- Andrew Hitt
- Jake Hoffman

3

- Burt Jones
- Anthony T. Kern
- Kathy Kiernen
- Timothy King
- Trevian Kutti
- James Lamon
- Cathleen Latham
- Jesse Law
- Stephen Lee
- Michele Lundgren
- Meshawn Maddock
- Michael McDonald
- Mark Meadows
- Shawn Meehan
- Robert Montgomery
- Daryl Moody
- Samuel I. Moorhead
- Loraine Pellegrino
- Sidney Powell
- James Renner
- Eileen Rice
- Mayra Rodriguez
- Mike Roman
- Rose Rook
- Kelly Ruh
- Greg Safsten
- David Shafer
- Marian Sheridan
- Ray Stallings Smith III

A-97

4

- Robert F. Spindell Jr.

- Shawn Still

- Ken Thompson

- Pam Travis

- James Troupis

- Kent Vanderwood

- Kelli Ward

- Michael Ward

- C.B. Yadav

This pardon does not apply to the President of the United States, Donald J. Trump.

The Attorney General, acting through the Pardon Attorney, shall administer and effectuate the issuance of certificates of pardon to eligible applicants.

IN WITNESS WHEREOF, I have hereunto set my hand this seventh day of November, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and fiftieth.

